# Handley, *et al. v.* Shaffer.

## *Assumpsit.*

(Decided May 30, 1912. 59 South. 286.)

1. *Brokers; What Are.*—Strictly speaking, a real estate broker is a middleman whose office it is to bring the principals together, for the purpose of having them negotiate with each other, and trade upon such terms as may be mutually satisfactory.

2. *Same; Compensation; Services.*—A broker employed merely to procure a purchaser, without specification as to price, is not entitled to compensation unless the purchaser is accepted by the principal on the principal's own terms; but if the employment is to secure a purchaser on specific terms, the broker is entitled to the agreed compensation when he procures one who is able, ready and willing to buy on those terms, although a sale is never made because of the principal's fault or refusal.

3. *Same.*—The right to compensation of a broker for producing a purchaser ready, able and willing to buy on the principal's terms, cannot be defeated by the capricious refusal of the principal to accept such purchase.

4. *Same; Procurement of Purchaser.*—In determining whether a broker has earned a commission by procuring .a purchaser, what amounts to a procurement is a question of fact, and it is enough that the efforts of the broker, acting upon the purchaser, are the efficient cause of his offer to purchaser, it not being necessary that such efforts be the sole cause.

5. *Same; Ability to Buy.*—The acceptance by the principal of the purchaser is conclusive that the purchaser was able, ready and willing to buy, in determining whether a broker has earned the commission by procuring a purchaser.

6. *Same; Knowledge of Principal.*—Ordinarily a broker's right to compensation for procuring a purchaser is not affected by the fact that the principal did not know that the purchaser was procured by the broker; however, special circumstances may at times require the broker.to inform his principal that one with whom he is negotiating is a customer sent by the broker, if such information be necessary to enable the principal to protect himself against deception, imposition or loss.

[Handley, et al. v. Shaffer.]

7. *Same; Good Faith.*—Where a broker is employed merely to bring his principal and prospective purchaser together so that they may negotiate as they choose, no confidence is reposed in the broker, and he need not further advise his principal, and no question of his good faith can be raised to avoid paying his compensation.

8. *Same; Duty to Principal.*—An agent employed to sell ordinarily owes it to his principal to use such skill and industry as may be required to accomplish the object of his employment, and with full fidelity to the just interest of his employers.

9. *Same; Time.*—A broker employed to procure a purchaser is entitled to compensation if he procures a person able, ready and willing to buy on the principal's terms within the period allowed; or if the time is not limited, before the revocation of his agency.

10. *Same; Revocation.*—A principal cannot defeat a broker's right to compensation for procuring a purchaser by revoking his authority pending negotiations with such custom.

11. *Same; Pleading; Defense.*—In a suit by a broker for commissions for procuring a purchaser for lands, it was not a good answer that plaintiff knowingly permitted the purchaser to negotiate with defendant without disclosing to defendant that the purchaser was procured through the broker's efforts, etc., where such pleas did not aver facts which imposed on the broker the duty to disclose to defendant the fact that the purchaser was the broker's customer, and also failed to aver defendant's ignorance of that fact.

12. *Same; Procuring Cause; Instructions.*—In a suit by a broker for commissions for procuring a purchaser for lands, a charge asserting that to be a procuring cause of a sale, it is not necessary that plaintiff should have conducted all of the negotiations leading to the sale, it being sufficient if he set in motion the machinery by which the work was done, and that he be the procuring cause of the sale, was properly given; it not being requisite that the broker be personally present when the vendor and purchaser meet.

13. *Same; Persons Liable.*—Where the suit is against two defendants for broker's commissions under general employment by defendant, the jury should have been instructed to find for defendants, if one of defendants alone employed plaintiff.

14. *Same; Complaint; Requisite.*—A complaint for broker's commissions for procuring a purchaser for land should aver performance of contract of employment by plaintiff according to its terms.

15. *Same.*—A complaint alleging employment to procure a purchaser, and that plaintiff did obtain such purchaser who subsequently did purchase said property, is insufficient, since it authorized recovery for procuring a purchaser before the employment began, or for procuring said purchaser for some other person than defendant.

16. *Same.*—Where a complaint to recover a broker's commission does not connect the procurement of a purchaser with any contractual service to defendant, it is insufficient, although it alleges procurement of a purchaser, ready, able and willing to buy on defendant's terms, and that the land was sold to him on such terms.

[Handley, et al. v. Shaffer.]

17. *Pleading; Variance; Joint Employment.*—Where the averment was of joint employment of plaintiff as a broker by two defendants to procure a purchaser for land, proof of employment by only one defendant not participated in by the other, constituted a fatal variance, notwithstanding section 2504, Code 1907, authorizes judgment against one or several defendants.

18. *Appeal and Error Review; Instructions.*—In order to procure a review of a refused charge hypothetically instructing on some particular issue, or phase of the evidence, it is not always necessary that the bill of exceptions set out all of the evidence, or all of its tendencies, it being sufficient if rule 32, Cir. Ct. Pr., be substantially complied with.

19. *Same; Presumption.*—Where the bill of exceptions did not purport to contain all of the evidence, this court will presume that there was evidence other than that disclosed by the bill of exceptions tending to show a general employment to justify the refusal of the general affirmative charge requested by both defendants on the theory that the joint employment pleaded had not been proved.

20. *Same.*—Where the issues involved confession and avoidance it will be presumed that there was evidence to avoid, in support of the court's ruling on requested charges, and so to remove the effect of conflicting evidence on the original issue, thereby justifying even the general affirmative charge.

APPEAL from Randolph Circuit Court.

Heard before Hon. S. L. BREWER.

Action by G. R. Shaffer against W. A. Handley and others for broker's commissions. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

The court directs the following statement: Plaintiff sues for commissions due to him as an agent or broker by reason of the sale of 24,000 acres of land. The original complaint contained two counts, the first for work and labor done, and the second setting up a special contract by which it is alleged defendants agreed to pay plaintiff 25 cents per acre to negotiate for them a sale of 24,000 acreas of land, which plaintiff carried out by procuring a purchaser who was able, ready, and willing to buy on defendants' terms, and who did actually buy. Counts A and B were added by way of amendment, after demurrer had been sustained to count 2, and demurrer was overruled to counts A and B. In these counts it is alleged that defendants employed plaintiff

[Handley, et al. v. Shaffer.]

to procure a purchaser for a tract of about 24,000 acres of land, and agreed to pay him 25 cents an acre for this service; count A alleging that he did procure a purchaser for said tract of land who was ready, able, and willing to buy the same on terms agreed to by the defendant, and said purchaser was accepted, and said lands were bought by and sold to him on said terms and conditions, but that defendants, after said sale, wholly failed and refused to pay plaintiff the amount of commissions that is due him. Count B alleges simply that he did obtain such purchaser, who subsequently did purchase said property, wherefore defendants now owe to the plaintiff the sum of $6,000, with interest thereon, for which he sues.

The plea of the general issue and 14 special pleas were filed, and demurrers were sustained to these special pleas, from 2 to 10 and 11, 13 and 14, and the cause went to the jury on special pleas 12 and 15. Errors were assigned as to the following pleas, to which demurrers were sustained:

(7) "Defendants say that plaintiff is estopped to claim any fee or commission for and on account of his services in connection with the matter averred, for the reason that plaintiff, without disclosing to the defendants the fact that he had obtained or procured the purchaser referred to in said complaint, knowingly allowed said purchaser to negotiate direct with the defendants in the effort to purchase said lands at the lowest figure that could be obtained, and said purchaser did obtain said lands at a price lower than any figure which had been quoted to plaintiff by defendants, or either of them, as the price which the defendants were ready to accept for said lands. Wherefore defendants say that it would be unconscionable to allow plaintiff to recover any commission whatever."

(10) "Defendant says that plaintiff ought not to have and maintain this action, for the reason that, without disclosing fully the circumstances to the defendants, the said plaintiff in person, or through his agent, represented the purchaser in and about the sale alleged. Wherefore these defendants say that they should not be compelled to pay him any commission whatever, as their agent or representative."

(11) "Defendants say that, notwithstanding the alleged employment of plaintiff, if that be the fact, he knowingly allowed the alleged purchaser to deal direct with the defendants for said land, and that in dealing with said purchaser direct defendants had no knowledge or notice of the fact that plaintiff had brought said purchaser into the transaction, and therefore paid or caused to be paid to said purchaser a commission for bringing about the sale referred to; and that plaintiff withheld any information to the defendants of the fact, if it be a fact, that he had procured or had any connection with said purchaser, and thereby caused defendants to close with said purchaser on terms not admitting of further commission. Wherefore defendants aver that they had no notice of plaintiff's connection therewith."

(13) "Defendants refer to and readopt each and every averment of defendants' plea designated 7, and add thereto the following words of averment: For these defendants aver, further, that plaintiff knew, at the time he allowed said purchaser to deal direct, that purchaser was to approach defendants as an independent or original buyer, and not as a purchaser procured by plaintiff, and defendants aver that they were to their injury thereby induced to close a trade with such purchaser at their lowest net price, which excluded the payment of any further commission."

[Handley, et al. v. Shaffer.]

(14) "Defendants say that plaintiff ought not to have and maintain his said action, for the reason that, while assuming to act as the employee of these defendants, he withheld from defendants material facts known to him which it was his duty to disclose, and which were reasonably calculated to and did cause defendants to sell said land at a less advantageous figure than they would have sold same, had said plaintiff advised them of the said material facts within his knowledge.

The following are special pleas 12 and 15, that went to the jury:

(12) "Defendants aver that, after receiving notice that the alleged purchaser intended to go direct to defendants for the purpose of acquiring said lands at the lowest possible price, and independently of plaintiff, he nevertheless withheld all information from the defendants to the effect that he (plaintiff) had brought said purchaser into the transaction; and defendants aver that said purchaser, who had been approached by defendants long prior to the time that plaintiff had any relation with said purchaser, thereupon came direct to the defendants for the purchase of said lands, and negotiated and secured binding agreements therefor, and a commission upon said sale, without any notice to defendants of any connection of plaintiff therewith, and independently of plaintiff; and defendants aver that they were by this means induced to deal with said purchaser as a party whose purchase of said lands would entail the payment of no commission to plaintiff, and in pursuance thereof defendants aver that they sold said lands to said purchaser at their lowest net price. Wherefore they aver that plaintiff, by standing by and allowing defendants to be dealt with in that manner by said purchaser, is estopped to claim any commission."

41—177

(15) "Defendants say that plaintiff ought not to have and maintain his said action, for that, after bringing said purchaser's attention to said land, he was notified by said purchaser that he intended to approach defendants directly and independently of plaintiff, and that plaintiff thereupon, in person or by his agent, to the knowledge of plaintiff, confederated or conspired, or acquiesced, without notice to the defendant, in a confederation or agreement, between his agent and the purchaser to induce or compel defendants to sell said land at a less advantageous price than they would have required, had plaintiff not failed to disclose the facts to defendants as he did."

The following charges were given at plaintiff's instance:

(1) "To be the procuring cause of the sale, it was not necessary that plaintiff should himself have conducted all the negotiations culminating in the sale of the property. It was enough if he set in motion the machinery by which the work was done."

(3) "The broker, it is often said, must be the procuring cause of the sale; but it is not held that he must be personally present when the vendor and vendee meet, and introduce them in the familiar sense of the word. It is enough if he be the cause of their coming together in the relation of vendor and vendee. They may meet by chance, and finally effect a sale; but if the broker be the means of putting the vendee's mind into the mood of purchasing, he certainly in that case procured the purchase."

(4) "Brokers are persons whose business it is to bring buyer and seller together. They need have nothing to do with the negotiation of the bargain. A broker becomes entitled to his commission whenever he procures for his principal a party with whom he is satis-

fied and who actually contracts for the purchase of the property at a price acceptable to the owner."

(7) "It is a well-established rule in this as well as in other states that, when a broker is employed to sell real estate, it is not necessary that the whole contract should be completed alone by him in order to entitle him to his commission, but that if, through his instrumentality, the purchaser and the owner are brought into contract, and a sale is made through the instrumentality of the agent, he is entitled to his compensation; and this without reference to whether the owner, at the time the sale was perfected had knowledge of the fact that he was making the sale through such instrumentality."

(8) "If the agent be authorized to make the sale and a purchase secured by him, it is of no consequence that the owner did not know the fact and made the sale himself."

(9) "It is not material that the owner did not at the time know that the purchaser was plaintiff's customer. It is sufficient that the purchaser is in fact such a customer."

The following charges, among others, were refused to the defendant:

(31) "I charge you that a joint employment is averred in this complaint, and that if you believe plaintiff was employed by only one of the defendants, if by either, your verdict must be for the defendants."

(34) "I charge you that there is a direct conflict in the evidence in this case as to whether or not plaintiff was employed by the defendants, or either of them, as alleged in his complaint, and unless you are reasonably satisfied that he was so employed by both these defendants, your verdict must be for the defendants."

(37) "If you believe the evidence, you cannot find that these defendants jointly employed plaintiff to perform the services referred to in the complaint."

(38) "I charge you that if you believe from the evidence that Joseph F. Johnston alone employed plaintiff, and offered him a commission to procure a purchaser, your verdict must be for the defendants."

So far as disclosed by the bill of exceptions, the evidence shows that the land, for the sale of which commissions are claimed, was the property of the West Alabama Land Company, a corporation, in which defendants and several other persons owned stock; that plaintiff was informed of such ownership of the land when he begun his dealings with them, but thought that defendants owned all the corporate stock; that all of plaintiff's transactions and agreements were had and made with defendant Johnston, except as shown by the following letters and telegram:

"Roanoke, Ala., March 26, 1906. Mr. G. R. Shaffer, Dadeville, Ala.: I have written Gov. Johnston, and sent your telegram to him, urging him to grant you an option. I thought that the best way, so you will hear from me in one and a half or two days. I can grant the option myself, as I am president of the company. I hope you will succeed in closing the deal, and by which you will make a good commission. Write me what progress you are making. Yours truly, W. M. Handley."

"Roanoke, Ala., March 26, 1906. Gov. Jos. F. Johnston, Birmingham, Ala.—Dear Sir: I am in receipt of a telegram this morning from G. R. Shaffer of Dadeville, Ala., and I inclose telegram to you herewith. He wants you or I to give him an option of thirty days on our 23,000 acres of land, as he claims some Pensacola parties are there to close the deal. If you are in proper

shape, you might wire me on receipt of this letter to grant him an option of twenty or thirty days. Yours truly, W. A. Handley."

Telegram: "April 17, 1906. G. R. Shaffer, Metropolitan Hotel, Birmingham. Have wired Johnston to give you additional option until you close deal. W. A. Handley."

The defendant Handley testified that he was never informed at any time by any person that plaintiff represented or claimed to represent him in the sale, and that he had never promised or agreed or stated to plaintiff that he would pay him 25 cents per acre for selling the land. Plaintiff's connection with the sale of the land began with the following option contract after about two weeks' correspondence with the defendant Johnston: "This agreement, made and entered into this the 29th day of March, 1906, by and between the West Alabama Land Company, a corporation under the laws of the state of Alabama, party of the first part, and John Sweet & Sons and Graves Shaffer, parties of the second part, witnesseth: That for and in consideration of the parties of the second part undertaking the examination and sale of the tract of about 24,000 acres of coal and timber land, located in townships 11, 12, 13, and 14 south, ranges 13 and 14 west, in Marion, Lamar, and Fayette counties, state of Alabama, which is owned by the parties of the first part, which the parties of the second part agree and obligate themselves to do, and to begin on same immediately, and use all due diligence and dispatch in making the aforesaid examination, and offering a sale of said property, the parties of the first part agree and obligate themselves to allow the parties of the second part the exclusive right to sell the above-named property upon the following terms of payment; that is, a minimum price of $2.60

per acre, out of which price the parties of the second part are to be paid by the parties of the first part 10 per cent. of said price as compensation for their services in examining the property and effecting a sale of the same. The parties of the first part further agree that, in the event of a sale being effected of the aforesaid property at a greater price than $2.60 per acre, then the parties to this agreement shall divide equally all the property sells for over and above the net price of $2.34 per acre to the parties of the first part. The parties of the second part agree to sell the property for the best price they may be able to maintain over and above the price of $2.60 per acre to the first bona fide purchaser who may be found or who presents himself either to the parties of the first or second part. This agreement is to be binding and in full force for ten days, at the expiration of which time it shall be null and void unless a purchaser is found who shall make such payments as may be agreed, and then have twenty days to examine title and complete the payment. West Alabama Land Company, by Joseph F. Johnston, Secretary and Treasurer. John Sweet & Sons, by J. W. Sweet. G. R. Shaffer."

This option was several times renewed by defendant Johnston, either verbally or by letter, and finally expired on June 1, 1906, without any sale having been made. About April 1, 1906, Shaffer interested the Douville Timber Company, or some of its members, in the matter of selling the land, and arranged with them or his subagents to find a purchaser, agreeing to pay them therefor a commission of 12½ cents per acre. In the latter part of April, 1906, the Douvilles wrote to H. H. Wefel, of Mobile, who ultimately purchased the land, with a view to securing him as a purchaser. Under the correspondence which ensued between them

there was a frequent interchange of letters between April and August. Douville's letter of May 21st to Wefel warned him that the proposition under which they were proceeding expired on June 1st, and on June 2d he wrote Wefel as follows: "If we go into this [that is, a joint purchase of the land], we, of course, would like to get them just as cheap as it can be bought, and, while we would be under obligations to Mr. Shaffer to allow him something for his bringing our attention to this, there would be no harm done in your seeing what you could do direct with the Governor, and if you could do better with him than we could with Shaffer, and get it cheaper, we would allow Shaffer a commission just the same, and we are satisfied that he would not want more than 10 cents per acre." Already, on May 17th, Wefel had opened independent negotiations with Johnston, reminding the latter of several conversations with him on the subject a few months previously, and this culminated in Johnston's giving Wefel an option on July 8th, to run for 15 days, under which a contract of sale was made on July 23d, and a formal deed of sale on September 1, 1906.

Johnston had no knowledge that Wefel was a purchaser obtained for him by plaintiff. On May 29, 1906, just before the expiration of plaintiff's last option extension, Johnston wrote plaintiff in response to the latter's request for another proposition to submit to Douville: "If it were all cash, and no delays, I might take $2.25 per acre and pay you $500, though I would do that more to give you some return for your time and expenses rather than a desire to sell." On May 31st plaintiff wrote to Douville: "I am now in position to sell you this land at $2.25 per acre, as this is the price I have got Johnston to acecpt, but would expect you to pay me a commission, as this is net price."

[Handley, et al. v. Shaffer.]

On June 11, 1906, Johnston wrote plaintiff: "I don't know what to do, except to say that you can peg along, and, if any one gets in the way, I'll try to save you something to make some compensation." Plaintiff testified that he had several conversations with Johnston, and that about June 1st an agreement was made between them by which plaintiff could go ahead and take the matter up with any one he saw fit, and if he secured a purchaser, outside of the Douvilles, Johnston would protect the price named, viz., $2.25 per acre net. Johnston testified that he had no agreement to pay plaintiff commission, other than appears in his written correspondence.

The jury found for plaintiff in the sum of $6,751.75.

CAMPBELL & JOHNSTON, for appellant. Counts A and B were insufficient in the respects pointed out by the demurrer, and the court should have sustained the demurrers.—*Wefel v. Stillman,* 44 South. 203; *Shields v. Sterrat,* 71 Atl. 1129; *Wiggins v. Wilson,* 45 South. 1011; *Fenwick v. Watkin,* 79 S. W. 214; *A. G. S. v. McWhorter,* 47 South. 84; *Union Ref. Co. v. Barton,* 77 Ala. 148; *Bailey v. Smith,* 103 Ala. 641; *Henderson v. Vincent,* 84 Ala. 99; *Wilkinson v. Mosely,* 18 Ala. 288; *Hart v. Bloodworth,* 49 Ala. 218; 47 Pac. 683; 9 Cyc. 728, 731. An agent who is acting for a known principal, within the scope of his authority, is not personnally responsible in the absence of an express agreement to that effect.—31 Cyc. 1552; *Hudson v. Scott,* 125 Ala. 173; *Humes v. Decatur L. Co.,* 98 Al.a 461; *Anderson v. Timberlake,* 114 Ala. 377; *Gulf C. C. Co. v. L. & N.,* 121 Ala. 625; *Richmond M. Wks. v. Moragne,* 119 Ala. 80; *Comer v. Bankhead,* 67 Ala. 461; *Steele v. Dart,* 6 Ala. 798; *Bingham v. Davidson,* 141 Ala. 559; *Jones v. Tucker,* 132 Ala. 305. The plaintiff al-

leged the joint obligation, and must of necessity prove
the joint obligation.—*Garrison v. Hawkins L. Co.,* 111
Ala. 308; *Cobb v. Keith,* 110 Ala. 614, and cases cited;
4 Cyc. 356; 22 Enc. P. & P. 565. There was no evi-
dence of employment either by themselves or as agent
for their principal.—3 Hun. 152; 204 U. S. 228; *Bailey
v. Smith, supra; Henderson v. Vincent, supra;* 19 N.
W. 799; 114 N. W. 998, and authorities supra. Under
the evidence plaintiff as agent procured no purchaser
within the terms of the contract.—Authorities supra.
Defendant was entitled to the affirmative charge as to
the several counts.—*Green v. South States I. Co.,* 50
South. 917. The undisputed facts show the breach
of every canon of fair dealing by Shaffer and his asso-
ciates.—*Bingham v. Davidson, supra; Wheelen v. Mc-
Crary,* 64 Ala. 319; 31 Cyc. 1442-3 and 1450, and au-
thorities supra. The recent case of *Skinner Mfg. Co.
v. Douville,* 49 South. 125, lays down the principles of
law and presents a parallel state of facts that disposes
of this case beyond peradventure. See *Carter v. Ownes,*
50 South. 641. A broker cannot be interested in both
the purchaser and the seller.—*Green v. Southern
States L. Co., supra;* 6 N. E. 364; 136 Mass. 482.
Charges 6 and 41 should have been given.—79 Am. St.
Rep. 79; 89 N. E. 239; 110 N. W. 65; *Wefel v. Stillman,
supra.* Counsel discuss the evidence, but without fur-
ther citation of authority.—61 N. Y. 415; 38 Am. St.
Rep. 441; 69 N. W. 79; 121 N. W. 741. Charges 4 and
7 were equally as erroneous.—*Bailey v. Smith, supra;
Hutto v. Stough, et al.,* 157 Ala. 567. Charge 10 should
have been given on the same authority. Counsel dis-
cuss other assignments of error but without citation
of authority.

[Handley, et al. v. Shaffer.]

FITTS & LEIGH, for appellee. The bill of exceptions does not purport to contain all the evidence, and hence, the court will not consider the refusal of the trial court to give the general charge.—*Hudson v. Bauer Groc. Co.,* 105 Ala. 208; *State v. Sykes,* 147 Ala. 160; *Sandlin v. Kennedy,* 51 South. 622. Following this, counsel cite a number of cases which they assert are based on facts somewhat like those presented here, and governed by like principles where the broker was held entitled to recover, as follows: *Marlatt v. Elliott,* 77 Pac. 104; *Scott v. Patterson,* 13 S. W. 419; *Bowser v. Feild,* 17 S. W. 45; *Bickart v. Hoffman,* 19 N. Y. Supp. 472; *Smith v. Anderson,* 21 Pac. 412; *Shepherd v. Hadden,* 29 N. J. L. 334, 345; *Carroll v. Pettit,* 22 N. Y. Supp. 253; *Diamond v. Wheeler,* 80 N. Y. Supp. 416; *Hope v. Beals,* 108 Mass. 562; *Chase v. Veal,* 18 S. W. Rep. 597; *Mousseau v. Dorsett,* 5 S. E. Rep. 780; *Leonard v. Reberts,* 36 Pac. 880; *Brand v. Merritt,* 25 Pac. 175; *Brooks v. Leathers,* 70 N. W. Rep. 1099; *Willey v. Rutherford,* 84 N. W. Rep. 14; *Sample v. Rand,* 84 N. W. Rep. 683; *Jaeger v. Glover,* 95 N. W. Rep. 311; *Crowley v. Myers,* 55 Atl. 305; *Black v. Snook,* 53 Atl. 648; *Turner v. Putnam,* 13 N. Y. Supp. 567; *Peckham v. Ashhurst,* 28 Atl. 337; *Rounds v. Allee,* 89 N. W. Rep. 1098; *Moore v. Baiber,* 92 Mich. 402; 52 N. W. 742; *Bacon v. Rupert,* 40 N. W. 832; *Whiting v. Saunders,* 49 N. Y. Supp. 1017; *Jarvis v. Schaefer,* 105 N. Y. 289; *Steward v. Rather,* 32 Wis. 349; *Clifford v. Meyer,* 34 N. E. 23, 26; *Gottschalk v. Jennings,* 45 Am. Dec. 70; *Hafner v. Herron,* 165 Ill. 250; *Sibbald v. Bethlehem,* 38 Am. Rep. 442; *Goss v. Stevens,* 21 N. W. 549; *McCormack v. Henderson,* 75 S. W. 171; *Cox v. Haun,* 26 N. E. 822; *Lloyd v. Matthews,* 51 N. Y. 124; *Sussdorf v. Schmidt,* 55 N. Y. 319; *Royster v. Mageveney,* 9 Lea. 148; *Adams v. Decker,* 34 Ill. App. 20; *Graves*

*v. Baines,* 14 S. W. 256; *Plant v. Thompson,* 16 Am. St. Rep. 512; *Gelatt v. Ridge,* 38 Am. St. Rep. 683; *Potvin v. Curran,* 14 N. W. 400; *Driesback v. Rollins,* 18 Pac. 187; *Ratts v. Shepard,* 14 Pac. 496; *Heffner v. Chambers,* 121 Pa. St. 94; *Heaton v. Edwards,* 51 N. W. 544; *Ransom v. Weston,* 68 N. W. 152; *Knox v. Parker,* 25 Pac. 909; 2 Wash. 34; *Williams v. Bishop,* 53 Pac. 239; *Schlegal v. Allerton,* 32 Atl. 363; *Gibson v. Hunt,* 94 N. W. 277.

SOMERVILLE, J.—The contract upon which plaintiff sues, as declared in counts A and B of the complaint, is one of brokerage only. A real estate broker strictly speaking is but a middleman whose office it is to bring the principals together, with the understanding that they are to negotiate with each other, and trade upon such terms as may be mutually satisfactory. *Leathers v. Canfield* (Mich.) 45 L. R. A. 33, note c, p. 51.

If the employment is merely to procure a purchaser, without specification as to the price he is to pay, it is evident that no compensation can be recovered by the broker unless the purchaser is accepted by his principal on the principal's own terms. But if the broker is to procure a purchaser on specified terms, and does procure one who is able, ready, and willing to buy on those terms, he is entitled to the compensation agreed on, although, by reason of his principal's fault or refusal, the sale is in fact never made. —19 Cyc. 242, 246. The principal cannot by a capricious refusal to accept such a purchaser defeat the broker's right to compensation. —*Notkins v. Pashalinski,* 83 Conn. 458, 20 Ann. Cas. 1023, note; *Sayre v. Wilson,* 86 Ala. 156, 5 South. 157. What amounts to the procurement of a purchaser is a question of fact, and it is enough that the efforts of

the broker, acting upon the purchaser, are the efficient cause of his offer to purchase.—*Chambers v. Seay,* 73 Ala. 372, 379; *Birmingham L. & L. Co. v. Thompson,* 86 Ala. 146, 149, 5 South. 473; *Sayre v. Wilson,* 86 Ala. 151, 156, 5 South. 157; *Henderson v. Vincent,* 84 Ala. 100, 4 South. 180; 19 Cyc. 257. They, of course, need not be the sole cause.

If such purchaser is accepted by his principal, this dispenses with the necessity of showing that the purchaser was able, ready, and willing to buy, since acceptance is taken as a conclusive admission of that fact. *Royster v. Mageveney,* 9 Lea (Tenn.) 151; *Wray v. Carpenter,* 16 Colo. 271, 27 Pac. 248, 25 Am. St. Rep. 265; *Davis v. Morgan,* 96 Ga. 518, 23 S. E. 417. Nor is it ordinarily material to the question of the broker's right to compensation that his vendor-principal did not know that the purchaser whom he has accepted was procured by the broker.—19 Cyc. 264; 4 Am. & Eng. Ency. Law, 980; notes to *Quist v. Goodfellow* (Minn.) 9 Ann. Cas. 431, 8 L. R. A. (N. S.) 153; *Lloyd v. Matthews,* 51 N. Y. 124. Special circumstances may, however, impose upon the broker the duty of informing his principal that a person with whom the latter is negotiating is a customer sent by the broker, if such information is obviously necessary to enable his principal to protect himself against deception, imposition, and loss.—*Skinner Mfg. Co. v. Douville,* 57 Fla. 180, 49 South. 125; *Wiggins v. Wilson,* 55 Fla. 346, 45 South. 1011.

This is but one phase of the general duty of an agent to disclose to his principal every fact within his knowledge which is material to his principal's interests in respect to the transaction to which his agency relates, including the agent's own interest therein, and his relations with the adverse party. The duty to make such

[Handley, et al. v. Shaffer.]

disclosures depends upon the nature and terms of the agency; i. e., whether the principal is entitled to the skill and judgment of the broker and his reasonable endeavors to induce his customer to purchase on the terms specified, and may therefore rely upon their exercise in his behalf.—*Leathers v. Canfield,* 117 Mich. 277, 75 N. W. 612, 45 L. R. A. 33; *Quist v. Goodfellow,* 99 Minn. 509, 110 N. W. 65, 8 L. R. A. (N. S.) 153, 9 Ann. Cas. 431, and case notes collecting the authorities.

Where, however, the broker is merely a middleman whose sole undertaking is to bring together a would-be seller and purchaser, so that they may negotiate as they choose, no confidence being reposed in the broker, he need not further advise his principal, and no question of his good faith can be raised for the purpose of defeating his right to compensation.—*Johnson v. Hayward,* 74 Neb. 157, 103 N. W. 1058, 107 N. W. 384, 5 L. R. A. (N. S.) 112, 12 Ann. Cas. 800; *Stewart v. Mather,* 32 Wis. 344; and authorities last above cited.

Though much alike in some respects, there are important distinctions between a broker's undertaking to negotiate or effect a sale and one to merely find a purchaser, although they are often dealt with by courts as being identical in nature and results. The failure to properly distinguish between these two differing classes of contracts, and the attempt to apply to one class all of the principles which regulate the other, have produced many of the inconsistencies and much of the confusion with which the reported cases on this subject seem to abound. The distinction is clearly emphasized in the two cases of *Montross v. Eddy,* 94 Mich. 100, 53 N. W. 916, 34 Am. St. Rep. 323, and *McDonald v. Maltz,* 94 Mich. 172, 53 N. W. 1058, 34 Am. St. Rep. 331. See, also, *Wiggins v. Wilson,* 55 Fla. 346, 45 South. 1011, and *Blodgett v. Sioux City R. Co.,* 63 Iowa, 606, 19 N. W. 799.

An agent employed to sell ordinarily owes to his principal the duty of service, with the exercise of such skill and industry as may be requisite to accomplish the object of his employment, and with full fidelity to the just interests of his employer.—*Henderson v. Vincent*, 84 Ala. 99, 4 South. 180; *Green v. South. States Lumber So.*, 141 Ala. 680, 37 South. 670; *McGar v. Adams*, 65 Ala. 106, 45 L. R. A. 42, note.

He is entitled to his commissions when he produces to his principal a person who is able, ready, and willing to buy on the terms prescribed by such principal within the period allowed, or, if the time is not limited, before the revocation of his agency. This assumes that the broker's negotiations have produced a result so complete that nothing remains to be done but acceptance of the purchaser by his principal.—*Wiggins v. Wilson*, 55 Fla. 346, 45 South. 1011. In such a case it is clearly his duty to disclose to his principal the fact that he has found a suitable purchaser; and, if the broker is aware that a person with whom he is negotiating is about to approach or has approached his principal with a view to dealing with him independently, it would be the broker's duty to inform his principal that such person is his customer, in order that the principal may protect his own as well as his broker's interests, by either declining to thus deal with the purchaser, or by so dealing as to make due allowance for the broker's commissions. Where the broker undertakes to himself effect the sale, the principal is not upon notice that every one who approaches him to buy may be a customer of his broker's, and he is under no duty to find out as he would be if he had employed the broker merely to find a purchaser for him. Nevertheless, the principal must act in entire good faith, and he cannot collusively or knowingly sell to his broker's customer,

[Handley, et al. v. Shaffer.]

and by such interference defeat the broker's right to effect a sale and earn his commissions.

Nor can he unfairly and dishonestly avail himself of the broker's labor by revoking his authority in the midst of his negotiations with a customer,. and himself complete the sale with such customer, upon the same or even less advantageous terms, for the purpose of evading his liability to the broker.—*Hutto v. Stough,* 157 Ala. 571, 47 South. 1031; *Cook v. Forst,* 116 Ala. 396, 22 South. 540; *Bailey v. Smith,* 103 Ala. 641, 15 South. 900; *Henderson v. Vincent,* 84 Ala. 100, 4 South. 180.

But if, while the agency to sell is still in force, and while the broker is yet negotiating with a prospective purchaser, that purchaser, contrary to fair dealing, should approach the vendor-principal without the knowledge or connivance of the broker, and the principal, having a clear right to sell independently of his broker, should in good faith sell to such purchaser in ignorance of his previous dealings with the broker, is the principal liable to the broker for commissions? This question is not presented in this case, and it is stated only for the purpose of excluding it from the control of the principles above discussed. See *Ball v. Dolan,* 21 S. D. 619, 114 N. W. 998, 15 L. R. A. (N. S.) 272, and note citing the cases; also, *Henderson v. Vincent,* 84 Ala. 99, 4 South. 180; *Cook v. Forest,* 116 Ala. 395, 22 South. 540; *Bailey v. Smith,* 103 Ala. 641, 15 South. 900; *Hutto v. Stough,* 157 Ala. 566, 571, 47 South. 1031; *Sharpley v. Moody,* 152 Ala. 549, 551, 44 South. 650. Time and space do not suffice for a detailed discussion of each plea, ground of demurrer, and charge given or refused, and we undertake to do no more than simply apply the principles above outlined, along with others which may be stated as we proceed.

Pleas 7, 10, and 13 are not good answers to counts A and B, which show a contract only "to obtain a purchaser"; the pleas themselves not averring any facts which would impose on plaintiff the duty of disclosing to defendants the fact that the party who presented himself to the principals was plaintiff's customer, and not averring defendants' ignorance of that fact.

Pleas 11 and 14 are subject to the first objection attributed to pleas 7, 10, and 13.

Plea 14 is bad also for not averring defendants' ignorance of such facts.

Charges 1, 3, and 4, given for plaintiff, state general principles of law which are correct. Charges 7, 8, and 9 are correct general statements of the law as applicable to a mere brokerage contract to obtain a purchaser; and as applicable to an undertaking by the agent to sell, defendants had the benefit of a full explanation and qualification in charge 5 given at their request. So far as the bill of exceptions discloses, both theories of the contract were open to the consideration of the jury.

The complaint avers a joint employment of the plaintiff by defendants Handley and Johnston. In such a case, as repeatedly held by this court, section 2504 of the Code notwithstanding, proof of employment by only one of them, not participated in by the other, does not authorize a recovery against either of them. The probatum does not support the allegatum, and the variance is fatal to any right of recovery.—*Gamble v. Kellum,* 97 Ala. 677, 12 South. 82; *Lee v. Wimberly,* 102 Ala. 539, 15 South. 444; *Garrison v. Hawkins Lumber Co.,* 111 Ala. 308, 20 South. 427. It is clear, therefore, that plaintiff could not recover here at all, unless the jury were reasonably satisfied that he was employed by the joint act of both defendants, either directly or mediate-

ly, so that both were bound by it. To show this was an essential part of plaintiff's case, and defendants' plea of the general issue imposed upon him the burden of its proof.

The bill of exceptions contains no recital that it sets out all, or substantially all, of the evidence or its tendencies. It does, however, set out in full the testimony of all of the dramatis personæ, including plaintiff and his subagent, Douville, and defendants and the purchaser, Wefel; and practically all of the letters and telegrams by which the various negotiations were carried on.

We discover nothing in the evidence shown which can support any inference whatever that Handley in any way participated in the alleged employment of plaintiff to obtain a purchaser for the land at 25 cents an acre, or was in any way bound therefor. On the contrary, Handley's own testimony fully and explicitly denies this, and the testimony of plaintiff and defendant Johnston shows quite clearly that whatever contract was made with plaintiff was made by Johnston alone. On this phase of the evidence defendants requested written charge 38: "If you believe from the evidence that Jos. F. Johnston alone employed plaintiff and offered him a commission to procure a purchaser, your verdict must be for the defendants." This was clearly a correct statement of the law as applicable to the issues presented by the pleadings. It is, however, argued for appellee that the refusal of the charge cannot be reviewed, because the bill of exceptions does not recite that it contains all of the evidence; that without all the evidence before the trial court the appellate court cannot pass upon the propriety of charges given or refused; and that such a state of the evidence will be presumed as would support the ruling

complained of.  Where a refused charge hypothetically
instructs the jury on some particular issue or phase
of the evidence, it is not always necessary that the bill
of exceptions should set out all the evidence, or all
of its tendencies.  Such a practice has, indeed, been
often condemned by this court as unnecessarily incum-
bering the record, increasing the costs of the appeal,
and aggravating the labors of the appellate court.  The
requirement is that enough of the testimony or its ten-
dencies shall be stated to enable this court to prop-
erly understand the question sought to be raised, and
to clearly see that the charge does not ignore the bear-
ing of any conflicting or qualifying testimony, or does
not tend to mislead, and is or is not a proper charge
to be given in the case on trial.  Circuit court rule 32,
2 Code 1907, p. 1526.

On the issue stated, defendants requested, also, the
general affirmative charge; and, to justify its refusal,
we must, and do, presume that there was other evidence
before the trial court tending to show a joint employ-
ment.  But it is evident that, whatever we might pre-
sume in this regard, the issue itself remains clearly de-
fined in the pleadings and clearly contested in the evi-
dence; and that no presumption as to the presence of
conflicting evidence, however weighty, can suffice to re-
move the issue and disentitle defendants to a proper in-
struction thereon.  We are, therefore, constrained to
hold that the trial court erred in refusing to give to
the jury written charge 38 as requested by defendants.
Illustrations will be found in the following cases:
*Davis v. State,* 17 Ala. 415; *Ex parte Huckabee,* 71 Ala.
427; *M. & E. Ry. Co. v. Kolb,* 73 Ala. 396, 405, 49 Am.
Rep. 54; *Davis v. Badders,* 95 Ala. 348, 361, 10 South.
422; *Postal Tel. Co. v. Hulsey,* 115 Ala. 193, 207, 22
South. 854; *Hurdy v. State,* 116 Ala. 441, 22 South. 993.

It is to be observed that, where the issues involve confession and avoidance, it will be presumed in support of the trial court's ruling on requested charges that there was evidence to avoid, and so to remove the effect of conflicting evidence on the original issue, thereby justifying, it may be, even the general affirmative charge.—*Sanders v. Steen,* 128 Ala. 633, 29 South. 586; *Davis v. Badders,* 95 Ala. 361, 10 South. 422; *Beard v. Du Bose,* 175 Ala. 411, 57 South. 703. Most of the reported cases dealing with incomplete bills of exceptions state the rule as applicable to the giving or refusal of the general affirmative charge, and hence are not pertinent to cases like the present. We refer, however, to the recent case of *Baker v. Patterson,* 171 Ala. 88, 55 South. 135, which reviews the general subject somewhat fully, and the reasoning of which is to some extent referable to the present case.

Other charges refused to defendants need not be considered.

Count B of the complaint, after setting up plaintiff's employment by defendants to obtain a purchaser, on a commission of 25 cents per acre, undertakes to show plaintiff's performance of the contract by averring merely that plaintiff "did obtain such purchaser, who subsequently did purchase said property." Its sufficiency in this respect was challenged by defendants' demurrer, which was overruled. Specifically, the objections are that there is no averment that a purchaser was obtained pursuant to plaintiff's employment, or in compliance with its terms, or as a proximate result of his service. We are inclined to the view, and so hold that a complaint such as this should aver a performance of the contract by plaintiff pursuant to, or in accordance with its terms, or something equivalent thereto. It was expressly so held in *Fenwick v. Watkins*

(Ky) 79 S. W. 214; and our decisions in *Wefel v. Stillman,* 151 Ala. 249, 44 South. 203, and *Union Ref. Co. v. Barton,* 77 Ala. 148, are strongly analogous, if not directly in point. If the averments of this count were held sufficient, they would be supported by proof that a purchaser had been obtained either before the employment began, or after it had terminated, and plaintiff would be entitled to recover; and this, too, even though the purchaser were obtained for some other person than defendants. This is not the law.—*Shields v. Sterrat,* 77 N. J. Law, 404, 71 Atl. 1129; *Kimball v. Hayes,* 199 Mass. 516, 85 N. E. 875; *Sibbald v. Iron Co.,* 83 N. Y. 379, 38 Am. Rep. 441. Certainly the services shown must be in some way connected with the contract with defendants. This is a part of plaintiff's case, and the conclusion does not follow as a necessary inference from the facts averred, at least not in the face of an apt demurrer.

By comparison, count A must also be regarded as insufficient in this respect, for, although it avers that plaintiff procured a purchaser "who was ready, able, and willing to buy on the terms agreed to by defendants, and said purchaser was accepted, and said lands were bought by and sold to him on said terms and conditions," it still does not connect the alleged procurement with any contractual service to defendants. It may be that, if the averment were that the purchaser procured was accepted by defendants, the connection would be sufficiently shown; but such is not the case. The authorities cited by appellee on this proposition are not in point. In *Lunsford v. Bailey,* 142 Ala. 319, 38 South. 362, there is an averment that plaintiff had "complied with all the provisions of said agreement"; and neither in that case nor in *Desmond v. Stebbins,*

[Hicks, et al. v. Dadeville Oil Mill.]

140 Mass. 339, 5 N. E. 150, was there any question of the sufficiency of the complaints in this respect.

For the errors pointed out, the judgment of the circuit court will be reversed, and the cause remanded. Reversed and remanded. All the Justices concur.