199 So.2d 689

**Donald R. PIERCE et al.**

v.

**James V. KELLEY et al.**

4 Div. 546.

Court of Appeals of Alabama.

Jan. 24, 1967.

Rehearing Denied March 28, 1967.

J. Robt. Ramsey and R. Clayton Wiggins, Dothan, John C. Godbold, Godbold, Hobbs & Copeland, Montgomery, for appellants.

G. M. Harrison, Merrill & Harrison, Dothan, for appellees.

JOHNSON, Judge.

This is a suit to recover for a real estate commission. Count one was in assumpsit for $1,000.00. Count two was added by amendment and claimed $1,000.00 for work and labor done. The appeal is from the judgment in favor of defendants by the Circuit Court of Houston County, at law.

Appellants, Donald R. Pierce and Julian T. Turner, are real estate brokers in Dothan, Alabama, and they shall be jointly referred to hereafter as the first broker. Appellees, James V. Kelley and Gertha N. Kelley had legal title to the property in question and shall be jointly hereafter referred to as the seller.

Mr. Benton Foy is a real estate broker in Dothan and will be hereafter referred to as the second broker. Mr. Stancil King is a real estate broker with the real estate firm of King and Williams and he will hereafter be referred to as the third broker. Mr. P. E. Mixon purchased the property from the seller and will hereafter be referred to as the buyer. Mrs. Helen Haisten Griffin was the owner of the mortgage on the property and will hereafter be referred to as the mortgagee. The property involved was a lot and a dwelling house located at 500 Haisten Drive in Dothan, Alabama.

The testimony of the first broker was, in substance, as follows: Sometime between the first and tenth of February, 1964, the seller listed by oral agreement the property for sale with the first broker. The sale price was $35,000.00 with a commission of 5%. The first broker knew that the property would also be listed with the second broker. The deed was dated June 12, 1964. The first broker first showed the property to the buyer about two months before the date of sale and he worked continuously with the buyer for several weeks. Early in June, 1964, the buyer offered to the first broker to purchase the property for $30,000.00. The first broker told the seller of this offer and the seller did not again contact him until after the buyer had executed a $1,-000.00 binder on the property through the third broker. At this time the final asking price offered by the seller to the first broker was $1,000.00 for sales commission, $1,000.00 as equity to the seller and assumption of the two mortgages, all of which totaled $30,922.98. The first mortgage against the property was for $25,522.-98, the second, for $3,400.00.

From the evidence it appears that at this point the buyer went to see the mortgagee at the suggestion of the first broker, for the purpose of persuading such mortgagee to reduce the amount outstanding on the mortgages so that the amount of the total transaction would not exceed $30,000.-00. After making this suggestion, the first broker was not again contacted by the buyer before he had agreed to purchase the property and had executed a $1,000.00 binder with the third broker. The first broker offered to contact the mortgagee in an attempt to reduce the mortgages, but the buyer wanted to do it. Upon learning of the binder executed by the buyer, the first broker talked to the seller and requested that the seller not sign the deed unless the commission to the first broker was paid through the buyer. The seller stated that she didn't know what to do; that she was going to contact her husband and an attorney, and that she would not sign the deed. The buyer's appointment with the mortgagee's representative was made by the first broker. The agreement between the seller and the first broker was described by the first broker as:

"Each as an individual broker, was to find his own customer and make his own sale. If Benton (the broker) made the sale, he would earn the commission; if I made the sale, I 'earned the commission'."

The testimony of the seller was, in substance, as follows: The agreement with the first broker was that any commission due was strictly to be a commission in the event of a sale. The first asking price was assumption of the mortgages and a return of his full "equity" of about $3,000.00. The final asking price was $1,500.00 for the equity, assumption of the mortgages by the buyer and the sales commission to be taken out of the purchase price. Upon the actual sale, the seller received $1,500.00 in cash.

The first broker never told Mr. Kelley (the seller) of the $30,000.00 offer to purchase made by the buyer. The sale was made through the third broker. The seller understood that the third broker was able to sell the property because he had "a connection" with the second broker. At the time the final offer was made to Mr. Kelley (the seller) he knew that the first broker had shown the property to the buyer,

but did not know the identity of the purchaser. However, before the deed was signed by Mr. Kelley (the seller), he knew the identity of the purchaser and the purchaser had been shown the property by the first broker. The agreement between the seller and the first broker was described by Mr. Kelley (the seller) as, "I told Mr. Pierce [the first broker] * * * that whoever made the sale should get the commission," and was described by Mrs. Kelley (the seller) as, "anyone who came up with a buyer could sell it." The only commission or compensation the seller agreed to pay the first broker was a commission on the sale of the property. He did not agree to pay the first broker for any work or labor done in and about the selling of the property in any other way than paying a commission on the sale of the property.

Mrs. Kelley (the seller) told the first broker that the asking price was $1,500.00 for their equity, but that the first broker never came to the seller with a purchaser that was ready, willing and able to buy at an amount whereby the seller would get $1,500.00 from the transaction. The second broker showed the property to several persons other than the buyer. The first broker showed the property to four or five persons. There was no communication to Mrs. Kelley (the seller) by the first broker of the offer made by the buyer of $30,000.00. Before Mrs. Kelley signed the deed she was told by the first broker that the buyer was their prospect and that if the sale was made to the buyer that the seller would be liable to the first broker for a commission.

The buyer testified, in substance, as follows: He was shown the property by the first broker who told him that the price was $32,500.00. The buyer told the first broker that he would only give $30,000.00 for the property. The last time the buyer went to see the first broker he made an offer of $30,000.00. This offer was made at the suggestion of the second and third broker.

The next day, after making the final offer, the buyer executed a binder of $1,000.00. The third broker told the buyer that the seller had accepted his offer. The first broker did not make the appointment with the mortgagee's representative for the buyer, said appointment being made by the buyer.

The testimony of the second broker was, in pertinent part, as follows: He was first contacted about selling the property by the seller and told that the asking price was $1,500.00 equity and assumption of the mortgages with the commission to come out of the purchase price. The seller told the second broker that the property was listed with the first broker. The second broker did not show the property to anyone. The first conversation about the property between the second broker and the buyer was at the third broker's office and at the request of the third broker. The second broker told the buyer to go back to see the first broker and attempt to work something out with him. The buyer returned to the second and third broker and reported that he could not work anything out with the first broker. The second and third brokers then went to see the mortgagee's representative.

The mortgagee agreed to reduce the second mortgage of $3,400.00 to $1,477.02 which enabled a sale of the property for $30,000.00. The first mortgage of $25,522.98 was assumed by the buyer. The buyer paid $4,477.00 in cash. The seller received $1,500.00 and the commission on the sale was $1,500.00. The balance of $1,477.02 represented the amount due the mortgagee on the second mortgage. However, the mortgagee only received $977.02 in cash because $500.00 was withheld by the third broker as payment on the commission for the sale of the property sold to the seller. The second broker had talked to the first broker several times about the sale of the property and the second broker knew that the first broker had produced the buyer as a possible purchaser.

The second broker received $1,000.00 as his commission.

The testimony of the third broker was, in essence, as follows: When the buyer approached the third broker about the property, the third broker told the buyer to resubmit his offer of $30,000.00 to the first broker. About two days later the buyer came to the third broker's office and the second broker was asked to join them. The buyer was advised to go see the first broker and resubmit his offer of $30,000.00. The next morning the buyer returned to the office of the third broker where he was joined by the second broker and where he executed a binder of $1,000.00. The second and third broker then talked to the mortgagee's representative and the mortgagee was persuaded to reduce the amount of the second mortgage from $3,400.00 to $1,477.-02. The second and third brokers each received $1,000.00.

The testimony of the mortgagee's representative was, in pertinent part, as follows: The first broker never talked to the representative about getting the mortgagee to reduce the amount of the mortgage. After the buyer, the second broker, and the third broker talked to him, the representative told the mortgagee of the offer of $30,000.00 for the property and the mortgagee agreed to reduce the amount of the second mortgage so that the property could be sold. The mortgagee agreed to the reduction about four, five or six days after her representative talked to her about it.

Before the buyer, the second broker and the third broker came to see the representative, the buyer had come to see him after the first broker had called and asked him to see the buyer. The buyer asked the representative when he saw the mortgagee to ask her about reducing the mortgage. The representative did not see the mortgagee before the second and third brokers had come to see him and they suggested that the representative telephone the mortgagee. The reduction of the second mortgage was made upon the condition that the reduction would be final upon full payment of the first mortgage. The first broker talked to the representative about the buyer purchasing the property before the third broker had contacted the representative.

The final offer made to the first broker was the same as that made to the third broker, i.e., $1,500.00 as equity to the seller, assumption of the mortgages, and the commission to come out of the purchase price. The evidence is otherwise clear that the seller was solely concerned with selling the property upon the desired terms and was not concerned with which broker consummated the sale nor concerned with who the purchaser might be.

There is no evidence that the seller did not remain neutral as between the several brokers. In Counts et al. v. Barnes, 224 Ala. 172, 139 So. 225, the evidence as to whether the first broker or the second broker brought the seller and buyer together was in conflict and was, therefore, held to be a question for the jury. In stating the principles of law applicable to the facts which are similar to the facts in the case at bar the court declared:

"The defendants had the right to openly list their property for sale with more than one broker, where no exclusive listing was made to any one agent; but such a listing necessarily placed the defendants under certain duties to each of the agents with whom the property was so listed. Upon the subject and nature of this duty, this court had the occasion to speak in a very recent case, and it was there held: 'As corollary to the rules declared in exclusive listing is that if several brokers or agents are openly employed, the duty of the seller is performed to each of such brokers or agents if he *remains neutral between them,* and such owner has the right to sell to a buyer produced by any one of them upon the terms of the several listings, without being called upon to decide

between the brokers or agents as to which of them was the primary and moving cause of the purchase.' (Italics supplied.) Ellison v. Sudduth Realty Co., 217 Ala. 337, 116 So. 333."

■ See Conway v. Matthews, 37 Ala. App. 513, 70 So.2d 827. What amounts to the procurement of a purchaser is a question of fact. Hanley v. Shaffer, 177 Ala. 636, 59 So. 286. The question as to whether or not the alleged purchaser was ready, willing, and able is for the jury's determination. Penney v. Speake, 256 Ala. 359, 54 So.2d 709. In Ellison v. Sudduth Realty Co., supra, it is stated:

"It must be the further rule of law that where two brokers are employed, and the fact of such other agency only is disclosed to said brokers, the one effects the sale who first brings the minds of the parties in accord or agreement, though the terms be different upon which the several brokers sought to make the sale."

■ There was evidence before the court that the second and third brokers working together brought the seller and the buyer in accord or agreement.

As a criterion for our decision in this cause, we cannot escape adherence to the principle pronounced by the late Bricken, P. J., when, speaking for the court, he so aptly stated in American Home Building & Loan Ass'n v. Long, 24 Ala.App. 34, 129 So. 793.

"To hold in line with the contention of appellant would in effect necessitate a ruling by this court that the judgment so rendered is manifestly and palpably against the evidence in this case, and that the preponderance of the evidence is decidedly adverse to the judgment pronounced and entered. This we cannot do under the general and well-settled principal of law that the verdict of a jury, or judgment by the court upon a trial without the intervention of a jury, should not be disturbed unless the adjudication

reached below is far afield from the evidence and the law applicable thereto. A rule of this import is declared in the case of Cobb v. Malone, 92 Ala. 630, 9 So. 738. The rule therein stated has been approved and followed by innumerable decisions of the appellate courts of this state."

The judgment is due to be and the same is hereby

Affirmed.