# Hughes v. Daniel.

### Assumpsit.

(Decided May 14, 1914. Rehearing denied June 4, 1914.
65 South. 518.)

1. *Brokers; Employment; Contract.*—Where a broker is employed to sell real estate within a specified time, he is not entitled to recover under his contract unless he procures a purchaser within that time.

2. *Same; When Earned.*—Where a broker was under a contract to sell real estate within a specified time, but continued after that time to try to effect a sale without an express agreement therefor, he must show that he furnished a purchaser able, ready and willing to pay in cash the price fixed by the owner, if the owner so demanded, or such other terms as might be settled by agreement between the owner and purchaser, and that the owner and the purchaser had agreed on the terms of the sale, before he can recover on the quantum meruit.

3. *Same.*—Where the broker procured a prospective purchaser who prepared a draft of a contract and delivered a check as earnest money, but no sale was consummated because the purchaser and the owner could not agree upon terms, the broker could not recover commissions.

4. *Same.*—Where the broker failed to procure a purchaser within the time specified within the terms of the contract, and thereafter they only gave him additional time, there could be no recovery on

the contract giving the additional time where the broker made no effort to bring about a sale therein.

5. *Same.*—Where a broker did not procure a purchaser willing to enter into a contract with the owner, and the owner subsequently obtained a decree confirming his title, and thereafter sold the property to a corporation formed by a prospective customer procured by the broker the broker must show that the owner was guilty of fraud in deferring the sale before he was entitled to recover commissions, and the mere fact that the owner did not tell the broker of the decree confirming his title was immaterial on that issue.

6. *Same.*—The fact that after the sale the owner promised to pay the broker a sum less than the broker claimed to be due, and that the broker accepted the promise, did not justify a finding that the owner was guilty of fraud, the action being for commissions, and the broker being entitled to recover only if the owner was guilty of fraud in deferring the sale.

7. *Evidence; Admissions.*—An offer or agreement to pay, or a payment by way of compromise, is not an admission of indebtedness or of any fact from which indebtedness may be inferred, although an unqualified statement conceding the validity of the claim is admissible even if forming a part of an effort to compromise.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN H. MILLER.

William H. Daniel sued R. J. Hughes for commissions alleged to be due him on a sale of real estate. Judgment for plaintiff and defendant appeals. Reversed and remanded.

FRANCIS D. NABORS, and ARTHUR L. BROWN, for appellant. Evidence of an offer to compromise is never admissible.—*Gibbs v. Wright,* 14 Ala. 466; *Matthews v. Farrell,* 140 Ala. 298; *Zimmerman M. Co. v. Dunn,* 151 Ala. 435; *Cronin v. Amer. Sec. Co.,* 163 Ala. 533. Before a broker is entitled to his commissions he must find a purchaser ready, able and willing to take the property on the terms prescribed by the contract.—*Crosthwaite v. Lebus,* 146 Ala. 527; *Cronin v. Amer. Sec. Co., supra.* The ability of Taylor to purchase the land was material.—*Cook v. Forst,* 116 Ala. 395; *Sayre v. Wilson,* 86 Ala. 151; *Sharpley v. Moody,* 152 Ala. 549. The court erred in permitting evidence of Taylor's connec-

[Hughes v. Daniel.]

tion with the East Woodward Land Company.—Author-
ities supra.  The court erred in allowing the price of the
subsequent sale of land to be introduced.—*Smith v.
Sharpe*, 162 Ala. 434.  On the authorities above cited
the court was in error in its action on the charges re-
quested and refused.

HARSH, BEDDOW & FITTS, for appellee.  Under the
evidence in this case plaintiff was entitled to his com-
mission.—*Bir. L. & L. Co. v. Thompson*, 86 Ala. 146;
*Sayre v. Wilson*, 86 Ala. 151; 43 L. R. A. 593 and cases
cited.  The agent is entitled to fair dealing from the
principal and his commissions cannot be defeated by
fraudulent practices.—*Cook v. Forst*, 116 Ala. 394;
*Hutto v. Stough*, 157 Ala. 556.  The agent is entitled
to his commissions notwithstanding the purchaser did
not comply with his contract.—*Bingham v. Davidson*,
141 Ala. 551; *Stevens v. Bailey*, 149 Ala. 256.  The af-
firmative instructions requested by defendant were bad
in form.—*Ala. I. Co. v. Smith*, 155 Ala. 287; *Goldstein
v. Leak*, 138 Ala. 573.

SAYRE, J.—In this case plaintiff (appellee) brought
suit against defendant (appellant) to recover commis-
sions alleged to have been earned in and about the sale
of a tract of land owned by defendant in the neighbor-
hood of the city of Birmingham.  After due examina-
tion of the evidence, we are clear to the conclusion that
plaintiff was not entitled to recover on any aspect of
the case, and that, defendant having omitted a request
for the general charge in proper form, the verdict should
have been set aside on defendant's motion for a new
trial.  We will not undertake to state the evidence in de-
tail, but only our conclusion concerning various phases
of the evidence and the reasons for our judgment upon

the whole case.  It will thus appear, we think, that the court below committed error at several points in the progress of the trial and as well in its ruling upon the motion for a new trial.

On February 14, 1910, defendant and his wife, upon the nominal consideration of $1, executed a paper writing by which they granted, bargained, and sold to plaintiff the option or right to purchase defendant's land at the price of $500 an acre, "less 5 per cent. commission." This option was limited to be exercised before May 14th, next ensuing.  These were the terms of the grant, except that defendant and his wife agreed that, in the event of a purchase within the time limited, they would execute a warranty deed conveying to plaintiff or his assignees a full, good and sufficient legal title. The complaint counted upon a breach of this undertaking, but there was in the evidence no pretense that plaintiff had offered to purchase, or had procured an offer of purchase by any one else, prior to the date fixed for the expiration of the option, and so it appeared without question that plaintiff was not entitled to recover under that count which alleged a breach of this contract.

But plaintiff continued his effort to find a purchaser, that, it seems, being all he ever expected to do, and succeeded on June 14, 1910, in bringing defendant and one J. H. Taylor into communication with each other under circumstances and with result to be stated.  The complaint contained a count upon the quantum meruit for the value of work and labor done by plaintiff for defendant from February 14, 1910, to June 14, 1910, and it may be inferred, as affording, perhaps, an explanation of the result, as plausible as any other, that plaintiff was allowed to recover under this count and upon the theory that defendant, by signing an agreement on

[Hughes v. Daniel.]

the last-named date for the sale of the property to Taylor, accepted the benefit of plaintiff's efforts and bound himself on that account to pay a commission of 5 per centum to plaintiff. Plaintiff was not entitled to recover on this theory of the case.

Any interest plaintiff may have acquired in the land by the instrument of the 14th of February was determined absolutely by his failure to purchase or to find a purchaser within the time therein stipulated. Thereafter defendant was entirely free to deal with the property in his own way and without reference to plaintiff. There was no express agreement for the further continuation of plaintiff's efforts; and if it be conceded that thereafter plaintiff did continue his efforts to find a purchaser with the knowledge and consent of the defendant, and with the common understanding that the stipulations of the original instrument should govern the terms of any sale that might follow and plaintiff's compensation, which is doubtful, still the implication is that plaintiff was bound to furnish a purchaser who was able, ready, and willing to pay in spot cash the price defendant had set upon his land, if defendant so demanded, or upon such other terms as might be settled by agreement between defendant and the purchaser to be furnished; and so it was that, on the concession above stated, plaintiff's right to a commission depended upon a finding that defendant and Taylor did in fact agree upon terms on the 14th of June.—*Alexander v. Smith,* 180 Ala. 541, 61 South. 68.

They did not agree. The testimony shows without dispute that on the date in question Taylor, a man of businesss in the city, prepared the draft of an agreement stating the terms upon which he was willing to buy. This paper provided that Taylor should pay $500 as earnest money, and that at the end of 60 days he was

to make a first payment of one-fourth of the proposed purchase price, or forfeit the $500, provided defendant was able in the meantime to get a judicial decree clearing his title of a cloud that rested upon it; otherwise defendant was to return the earnest money. By its terms a commission of 5 per centum was to be divided among defendant and two other named persons. This paper writing, along with a check for $500, Taylor gave to plaintiff in order that he might take it to defendant, who lived in the country, and get his agreement and signature. Plaintiff had no other authority. Plaintiff procured the signatures of defendant and his wife to this paper and delivered the check, but not until he had changed the stipulations so as to make the entire commission of 5 per centum payable to himself, excluding the other two persons named in Taylor's draft of the contract. On the next day this paper was put into the possession of Nabors, defendant's attorney, who scratched and interlined it at numerous points; the most important change, probably, being to require a first payment of one-third of the purchase price instead of one-fourth, as Taylor had written it. In this shape it was submitted to Taylor, who refused to accept it. Thereupon defendant returned the check to Taylor and drew lines of cancellation through the signatures of himself and wife. The parties are not in accord as to all the facts of the transaction of the day before between plaintiff and defendant. Plaintiff testified and contends that there was an unconditional delivery to him for Taylor. Defendant offered the evidence going to show that he delivered the paper to plaintiff with the express understanding that it should not be delivered to Taylor until it had been examined and approved by his (defendant's) counsel, Nabors. The great weight of the evidence is with defendant on this issue. Upon consideration of de-

fendant's testimony, of the testimony of witness who swore that plaitniff within a few hours made a statement of the facts substantially in accord with defendant's version of the terms upon which defendant gave the paper to plaintiff after its signing, of the evidence going to show that plaintiff participated in the alteration of the paper on the next day, making some of them with his own hand, and of the uncontradicted evidence as to what else occurred on that occasion, we are entirely confident that a clear statement to the jury of this issue and its necessary bearing upon the merits of the controversy would have led to a different result. It is an ineradicable spot upon plaintiff's claim of an unconditional delivery, and this without dispute, that on the next day, at a conference of plaintiff, defendant, defendant's counsel, and Taylor, the language and meaning of the paper writing were materially changed and the contract rejected by Taylor and the check returned to him without a word of comment, suggestion, or protest from any quarter, and that then plaintiff procured from defendant another contract in writing, by the terms of which he was authorized to sell the land to Taylor or anybody else within 60 days after defendant's title might be relieved of its cloud.

But upon the undisputed evidence, without regard to controverted questions of fact, plaintiff was not entitled to recover on this last-named theory. The paper writing signed by defendant on the 14th of June purported to witness a contract between defendant and Taylor. Plaintiff was not a party. He was a mere middleman, a broker. He was to receive a benefit, but his right depended upon the execution of an agreement between the negotiating principals. As for any right of plaintiff, the principals negotiating for a contract were free to insist upon their own terms. Taylor absolutely

so, and defendant also, provided only the land brought $500 an acre, and their perfect accord was necessary to a contract. The contract, when delivered to plaintiff, was incomplete; it had been changed; it lacked Taylor's approval in its new form and his signature. After its alteration by plaintiff, and its acceptance by defendant, it was in effect an offer of new terms from defendant to Taylor. Plaintiff's delivery of the check under these circumstances was likewise ineffectual until ratified by Taylor. Let it be assumed, as plaintiff would have it, that defendant's lawyer had no right to further change the offer, that Taylor had the right to stand upon the offer shown by the instrument as it was when delivered by defendant to plaintiff, and that the rock upon which the negotiation came to naught was the change in the amount of the first payment, still defendant's offer in the shape in which it left his hands, to become a contract, needed to be accepted by Taylor. But in fact it was never accepted. On the contrary, Taylor accepted the return of his check, and thereupon the negotiation was at an end. In this there was no infringement of any right of plaintiff, nor did it give rise to any right in him, for he could have no right until defendant and Taylor were agreed at every point, whether of much or little consequence.

As we have already said, after the negotiation for a sale to Taylor had failed, on the 15th of June, plaintiff procured a right, though not an exclusive right, to sell within 60 days after defendant's title should be cleared. This contract was not declared upon, and there could have been no recovery upon it, for plaintiff's testimony was that thereafter he made no effort to bring about a sale.

Some eight or ten months after the negotiation with Taylor had failed, and four or five months after a de-

cree had confirmed defendant's title, defendant sold his land to a corporation that had been formed in the meantime by Taylor and others; Taylor appearing as subscriber for one-half of the stock. This sale was for the price, approximately, that had been set upon the property during the negotiation with Taylor. It may be inferred that the formation of this corporation was suggested by Taylor's previously acquired knowledge of defendant's willingness to sell at a certain price and was organized especially for the purchase and exploitation of defendant's land. Upon these facts plaintiff bases the suggestion that the sale was in actual fraud of his rights, and that he ought to recover on the consideration that originally he brought defendant and Taylor together. We are wholly unable to find in the record any evidence of fraud. Taylor owed plaintiff no duty and might at any time buy with sole reference to his own convenience and best advantage. After June 15th the character of the relation between plaintiff and defendant and plaintiff's rights were defined and limited by the contract of that date. Plaintiff did nothing under that contract. He would explain this by saying that defendant did not inform him of the removal of the cloud upon his title. Defendant owed him no such duty. Plaintiff must then have recourse to the proposition that the failure of defendant and Taylor to agree upon a sale on the 15th of June was the premeditated result of a purpose, on the defendant's part at least, to defer the sale then under consideration in order to defraud plaintiff of his commission. It is possible, of course, that this may have been the case, but there is no semblance of proof of it in the record.

Finally plaintiff was allowed to testify that, after the sale to the corporation, defendant had promised to pay plaintiff a sum less than plaintiff claimed to be due to

him, and his (plaintiff's) acceptance of the promise. There is no occasion to pass upon the obligation of this promise, as made, upon consideration of a settlement of a doubtful claim and merging plaintiff's disputed right, for it was not declared upon, and the entire record refutes the idea that plaintiff sought to recover upon it as a binding promise to pay. Evidently this testimony was offered and admitted as an admission of indebtedness by defendant. There was objection to some parts of this testimony. None of it was admissible on proper objection. All of it together, under the circumstances, proved nothing in respect to any issue made by the pleadings. Certainly it was not an admission of fraud, nor of any fact from which fraud might be inferred; and defendant entered into the negotiation, which plaintiff pressed upon him, with the claim that plaintiff had not sold the property. Plaintiff, according to his own testimony, had done nothing under his contract of the 15th of June in which he had undertaken to find a purchaser able, ready, and willing to buy on specified terms, nor had he effected a sale of the land, as in substance he had undertaken to do by his contract of the 14th of February; and, unless there was fraud, he was not entitled to compensation as for either a purchaser procured or a sale effected.—*Handley v. Shaffer*, 177 Ala. 36, 59 South. 286; *Cronin v. American Securities Co.*, 163 Ala. 533, 50 South. 915, 136 Am. St. Rep. 88; *Crosthwaite v. Lebus*, 146 Ala. 525, 41 South. 853.

An offer or agreement to pay, or even a payment, in the way of compromise, is not an admission of indebtedness nor of any fact from which indebtedness may be inferred. An unqualified statement conceding an opponent's claim is receivable despite its occurrence as a part of an effort to compromise.—2 Wigm. Ev. § 1062. If an admission as of fact is made because it is a fact, the

evidence to prove it is competent.—*Matthews v. Farrell,* 140 Ala. 298, 37 South. 325. If, however, an offer carry on its face the character of a "peace offering," as appears to have been the case here, it is privileged.—*Gibbs v. Wright,* 14 Ala. 465.

The motion for a new trial should have been granted. Reversed and remanded. All the Justices concur.