# Bruce v. Drake.

Assumpsit.

(Decided November 25, 1915.  70 South. 273.)

1. **Brokers; Commission; Right to.**—Where plaintiff put defendant in communication with the prospective buyer with the understanding that he should have a commission on any sale that might thereby be affected, plaintiff was not entitled to the commission except in the event that defendant accepted the purchaser on her own terms.

2. **Same.**—Where the seller and the buyer, with whom the broker placed the seller in touch, repudiated the agreement of purchase, and made a new agreement with two conditions; (1) that neither party should be bound unless the seller could raise a loan of $1,500 upon the land which the buyer was to convey; and (2) unless the buyer had a marketable title to his land, which conditions were unperformed when the parties met to exchange conveyances, and the sale was not consummated, plaintiff was not entitled to his commissions from the seller, although the sale was later consummated on different terms.

3. **Same; Good Faith.**—The evidence examined and held insufficient to show the seller's lack of good faith in the series of transactions wherein her contract to sell to the buyer fell through, and she later consummated a sale through another agent to the same buyer.

APPEAL from St. Clair Circuit Court.

Heard before Hon. JAMES E. BLACKWOOD.

Assumpsit by James B. Drake against Martha M. Bruce to recover broker's commission. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Transferred from Court of Appeals under act creating said court.

EMBRY & EMBRY, for appellant.  J. P. MONTGOMERY, for appellee.

SAYRE, J.—Plaintiff in the court below, appellee here, sued for commissions alleged to have been earned in finding a pur-

chaser for defendant's 200-acre tract of land. The case was tried by the court without a jury.

(1) On defendant's land there was a mortgage debt of $5,000 due or about to become due to the Bank of Springville, and she was trying to sell in order to pay the debt. She had not gone to plaintiff for his help as a broker; but he, learning casually that she desired to sell her land, had put her into communication with one Haygood with the understanding that he was to have a commission on any sale that might be effected. In this situation it is evident that plaintiff was entitled to compensation in the event only that defendant accepted Haygood as a purchaser on the defendant's own terms.—*Handley v. Shaffer*, 177 Ala. 636, 59 South. 286; *Alexander v. Smith*, 180 Ala. 541, 61 South. 68.

Defendant participated to some extent in the negotiations that led up to the agreement in writing found in the record, but in the main defendant's son Gillespie conducted the negotiations and undertook to represent his mother in fixing its precise terms. On its face, this agreement purports to have been executed by Gillespie on his own account as one of the contracting parties. Its closing stipulation is that the trade was to be closed as soon as Gillespie negotiated "a loan of $3,500 on 204 acres," meaning as the evidence very clearly shows, the 200 acres defendant was trying to sell. It is clear also that Haygood did not intend to assume the whole of the $5,000 mortgage, and that he had not $3,500 in money to pay. This stipulation meant, then, that the binding obligation of the contract was dependant upon an arrangement being made for a new mortgage, or an extension of the existing mortgage, in the sum of $3,500, which was to be made or assumed by Haygood as the equivalent of $3,500 in cash. This left $1,500 to be raised by defendant, to be borrowed by her from some other source as Haygood knew, and this sum in connection with the new or extended mortgage, was to be used to satisfy the existing debt to the bank. Plaintiff proved that Haygood procured an agreement with the Bank of Springville by which it was to make a new loan of $3,500 on defendant's land, and that at the final interview between the parties, when they met by appointment to carry out the agreement, Haygood announced that he was then and there able, willing, and ready on his part to do so.

(2) The instrument in writing to which we have referred evidenced an executory agreement to convey upon condition, and,

[Bruce v. Drake.]

apart from the question raised in respect to Haygood's title, to which we will refer hereafter, it may be conceded that on the facts thus far stated plaintiff would have been entitled to judgment. But the inquiry arises, what, upon the whole evidence, was the contract between defendant and Haygood? Plaintiff was not a party to the contract, whatever it was. He was a mere middleman, a broker. He was to receive a benefit, but his right depended altogether upon a mutual agreement in every particular between the principals. As for any right of plaintiff under his employment, the negotiating principals were each entirely free to insist upon their own terms.—*Hughes v. Daniel*, 187 Ala. 41, 65 South. 518. Now Gillespie's authority to bind defendant by the particular terms of the instrument in writing was not shown otherwise than by his declaration, made at the time of its execution, in the absence of defendant. And when Haygood, shortly afterwards, approached defendant on the subject of the contract, nothing to indicate ratification having occurred in the meantime, she agreed to it upon condition that she could raise the sum necessary to pay the difference between the existing mortgage and that part of the debt secured by it which Haygood had agreed to assume, and he was given to understand—indeed, it is very probable that everybody concerned understood all the while—that she expected to raise the necessary cash by a mortgage on the land which he was to convey to her in part payment for her tract, and that in fact no other prospect was open to her. This amounted to a repudiation by defendant of the terms of the contract as arranged by Gillespie and the assertion of the right to ingraft a new term upon it as a condition upon which it should become binding upon her. In this asserted right Haygood acquiesced by saying nothing to the contrary and by joining in the efforts which defendant afterwards made to procure a loan upon his land. This condition and understanding became then an essential part of the contract between the parties, with the effect that neither party was to be bound unless defendant should be able to raise a loan of $1,500 upon the Haygood land.

There is in the evidence strong indication that defendant had no wish, at any time, to recede from this last agreement, but, on the contrary, she desired that it should be consummated. Having that end in view, she submitted an abstract of Hay-

good's title to a competent attorney, who advised her that, while Haygood probably had a holding title to his land, his title was not marketable. The state of his title is not otherwise shown. There is nothing to impeach the good faith or correctness of the attorney's advice, and upon this alone defendant might have competently denied liability under the terms of the contract as negotiated by Gillespie, for it provided that Haygood's title was to be "good and merchantable," or the contract was to be void. Nevertheless, defendant made efforts in several directions to raise a loan, and there appears no reason whatever to doubt the good faith or diligence of these efforts in which she had the assistance of both plaintiff and Haygood. But she was unseccessful. It resulted that when the parties met at a time appointed for the execution of conveyances, two conditions of the contract had not been fulfilled. Whether defendant then urged any objection to Haygood's title is in dispute, but it is certain that she had previously brought her attorney's advice to the attention of Haygood, and that one ground upon which she at the time put her inability to complete the trade was that she had been unable to raise the money. She expressed her regret and asked for further time, but Haygood, announcing, in effect, that he would not be further bothered about the matter, called the trade off. In this state of the case, we hold, on the considerations and authorities to which we have adverted, that defendant was not liable to plaintiff for the commission claimed.

(3) Some time after her final interview with Haygood and plaintiff, mentioned above, defendant sold the property to Haygood through another agent, and this fact may have been deemed sufficient to suggest the thought that her alleged inability to raise the difference between the existing mortgage debt and that part of if which Haygood was to assume was a mere device on the part of defendant by which she sought to defraud plaintiff of his commission, while availing herself of his efforts in bringing to her a purchaser. If this was the conclusion in the court below, it overlooked the trouble with Haygood's title, and besides was not sustained by the proofs. The evidence on the question tended very strongly to show that defendant had no such result in contemplation at the time negotiations with Haygood were broken off by him, not by her, and that she afterwards sold her property at a much reduced price through the agency of the

cashier of the Bank of Springville into whose hands she placed her lands for sale after the definite refusal of Haygood to continue the negotiation which had been put·on foot by the efforts of plaintiff. The cashier, having been advised, of course, by previous events of Haygood's desire to purchase the land, opened the subject again with him, and finally effected a sale on terms, as we have indicated, of less advantage to defendant than those originally offered by Haygood. Looking to the evidence as a whole, we have found nothing sufficient to cast a shadow upon defendant's good faith throughout, and we are clear to the conclusion that the proof did not warrant the judgment against defendant. The judgment rendered in the court below will therefore be reversed, and a judgment here rendered, dismissing the cause at appellee's cost.

Reversed and rendered.

ANDERSON, C. J., and MCCLELLAN and SOMERVILLE, JJ., concur.