Pat Thompson, as administratrix of the estate of her husband Wayne Daniel Thompson, sued Norfolk Southern Railroad and its train engineer E.E. Haynes, alleging that negligence and/or wantonness on their part had caused the wrongful death of Wayne Thompson, who was killed when his automobile was struck by a freight train at the "Baker Lane Crossing" in Colbert County. The trial court directed a verdict for the defendants on the plaintiff's wantonness claim, but submitted her negligence claim to the jury. The jury awarded Thompson $1,000,000 in damages, and the trial judge entered a judgment on that verdict. The defendants appealed, arguing that the evidence required a finding that Mr. Thompson had negligently failed to stop, look, and listen at the railroad crossing; that he had thereby been contributorily negligent; and, therefore, that the trial judge should have granted the defendants' motion for a judgment notwithstanding the verdict. The defendants also argue that the trial court improperly admitted into evidence certain statements made to the plaintiff that the defendants say should have been excluded. For the following reasons, we affirm the judgment.
Mr. Thompson was killed when his vehicle was hit by a freight train at the Baker Lane Crossing in November 1990. Although the engineer testified that he blew the whistle in an effort to alert Mr. Thompson of the oncoming train, other witnesses testified that they did not remember hearing the whistle. These same witnesses said they did remember hearing the crash.
First, the defendants contend that the trial court erred in not granting their motions for a directed verdict, a judgment notwithstanding the verdict or a new trial, because, they say, the evidence offered showed that Mr. Thompson was contributorily negligent, as a matter of law. The defendants contend that the trial judge instructed the jury that someone familiar with the crossing would have a duty to stop, look, and listen. The engineer testified that Thompson did not stop; therefore, the defendants argue that he was contributorily negligent.
The trial judge instructed the jury as follows:
 "The plaintiff claims that the railroad, acting through its agents and employees *Page 691 
and Mr. Haynes, were guilty of negligence in the operation of the train in question at the time and at the place complained of by the plaintiff, and that such negligence proximately caused the death of Wayne Daniel Thompson. And when a plaintiff files a claim like that, the defendants have a right to come in and answer the claim, and the defendants have done that in this case. And first of all, in their answer the defendants have denied all of the allegations of the plaintiff's complaint. That means they deny that they were guilty of any negligence on the occasion complained of or that anything they did caused Mr. Thompson's death. And they have also filed in their answer what is known as an affirmative defense, and that is the defense of contributory negligence. And that is, that the defendants claim that Wayne Daniel Thompson himself was guilty of negligence on the occasion complained of at that time and at that place and that his negligence proximately caused or contributed to his death; and that therefore, the plaintiff cannot recover in this case. Now that is the claim that has been made by the plaintiff and the answer that has been filed by the defendants.
 "And in the course of this Charge I'm going to instruct you with respect to definitions of legal terms and also read you some statutes.
 "First of all, though, I charge you that the burden is upon the plaintiff to reasonably satisfy you by the evidence of the truthfulness of the matters and things claimed by her before she would be entitled to recover. However, with respect to the affirmative defense of contributory negligence on the part of Wayne Daniel Thompson, I charge you that the burden is upon the defendant to reasonably satisfy you by the evidence of the truthfulness of that defense.
". . . .
 "Now, as I have explained to you, members of the jury, the defendant has pled the affirmative defense of contributory negligence, and I would like to define that term for you. Contributory negligence is negligence on the part of Mr. Wayne Daniel Thompson that proximately contributed to his death. And as I have told you, the burden is upon the defendant to reasonably satisfy you from the evidence as to the truth of the material allegations of this defense.
 "Now, the Court charges you, members of the jury, that the defendants can prove negligence on the part of the deceased, Wayne Daniel Thompson, by proving to your reasonable satisfaction that Mr. Thompson violated a rule or rules of the road. However, before such a violation will be a defense on the part of the defendants, such violation must proximately cause or contribute to cause the accident that resulted in the death of Mr. Thompson.
 "I will now read you certain of these rules of the road, the violation of which is negligence as a matter of law. The fact that I read these statutes is no indication that any of these statutes have been violated or that such violation proximately caused or contributed to cause the death of Mr. Thompson. It is for you to decide whether or not the statutes have been violated and whether or not any such violation proximately caused, or contributed to cause, the accident that resulted in the death of Mr. Thompson, depending on what you find the facts to be.
 "I charge you, members of the jury, that the Alabama rules of the road provide as follows: In Section 32-5A-150 of the Code of Alabama, 'Obedience to signal indicating [approaching] train,' subsection (a): 'Whenever [a] person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply there [sic, when] . . . (3) A railroad train approaching within approximately 1,500 feet of the highway crossing emits a signal audible from such distance and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard; and (4) An approaching railroad *Page 692 
train is plainly visible and is in hazardous proximity to such crossing.'
 "I further charge you, members of the jury, that Section 32-5A-170 provides as follows: 'No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards [in existence]. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing [and] when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, [or] when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.'
 "I further charge you, members of the jury, that if a motorist cannot see clearly, he has no right to assume that his course is free of danger but must anticipate that some hazard lies immediately beyond his range of vision. And I further charge you that if a motorist's vision is obscured, an added duty of keeping a lookout is imposed rather than excusing an inadequate lookout.
 "I charge you, members of the jury, that there is not an absolute duty to stop, look, and listen before a traveler may go on a railroad crossing in every case and under all circumstances. However, the court does charge the jury that a person in the process of approaching and attempting to cross a railroad track with knowledge on his part of the location of the railroad track is under a duty to stop, look, and listen for approaching train[s]. This use of his senses must be made within such nearness to the track and under such circumstances as will afford the traveler the knowledge of whether he may cross the track with reasonable safety from collision with an approaching train. Such duty is also a continuing duty during his attempt to cross between the time he last stopped, looked, and listened, if he did so, and the time he entered the zone of danger made by the train's entering the crossing.
 "I charge you, members of the jury, that if you are reasonably satisfied from the evidence that the deceased, Wayne Daniel Thompson, was guilty of contributory negligence at the time and place complained of, then the plaintiff cannot recover for any initial simple negligence of the defendants."
R.T. at 400-08. The engineer testified that Thompson, before attempting to cross the railroad tracks, did not stop, look toward the train, or take any of the precautions required by law to check to see if a train was approaching. The defendants argue that this testimony showed that Thompson was contributorily negligent as a matter of law. We disagree.
In order to prove that Thompson was contributorily negligent, the defendants had the burden of proving (1) that Thompson had failed to exercise reasonable care (i.e., had failed to stop, look, and listen) and (2) that that failure was the proximate cause of his accident. See Slade v. City of Montgomery,577 So.2d 887, 892 (Ala. 1991) (defining contributory negligence as "negligence on the part of a plaintiff that proximately contributes to the plaintiff's injury"). Evidence indicated that the crossing where Thompson was killed was a hazardous one. The plaintiff introduced photographs showing a sharp curve near the crossing. She also offered the following expert testimony:
 "It's really a complex problem. The basis is the site distance that I talked to you about, but then you have to superimpose on that how a motorist has to operate the vehicle in going through that particular approach to the crossing. And you'll find that he has a number of factors he has to deal with to clear before he can accomplish the movement across the crossing. And I'm speaking of the business that's involved with the motorist — any motorist approaching that crossing. And the way Mr. Thompson is gonna be making a left turn, he's got to account for the highway traffic to see that there's a sufficient gap. He's got to pull the vehicle through there before that gap closes and something else comes down the highway. He's got to use his eyes to search to the right to see if there's *Page 693 
a train approaching, to search to the left to see if a train is approaching. And then he has to concentrate internally in the vehicle in the steering mechanisms, the braking, the acceleration, the turn — the turn signals and all of those factors come into play as he rounds the corner and then tries to gauge exactly how to approach this crossing to find the right stopping point. And, of course, he will find that stopping point if he's alerted to the fact that a train is coming. But if he is not alerted to that, he will be generally proceeding across with that negative expectancy we mentioned a minute ago, to anticipate that it's clear and he can pass through the crossing. The thing that makes it hazardous is because it can be clear as far as he can see, but that might not be a sufficient amount of distance for him to see so that it in fact is clear and that's the condition that we have here. He looks toward the right and he sees as far as he can see. And he then begins to check the other factors. In the meantime if the train is in time and space related to the pattern that he was in, it's inevitable that he'll have [a] crash because he'll enter into that nonrecovery area which starts about 70 feet from the rail. There's no way that he can avoid the collision if the train happens to be coming at that particular point in time.
". . . .
 "Q. Would a motorist approaching that Baker Lane crossing — and assuming the foliage to be as I have described, after clearing the foliage and having a view, be able to stop to avoid an oncoming train?
 "A. No, sir. At that point he would be in the nonrecovery area and would not be able to stop."
R.T. at 361-62. The issue of contributory negligence is generally one to be determined by a jury. See Adams v. CoffeeCounty, 596 So.2d 892, 895 (Ala. 1992). The plaintiff's expert testified that the dynamics of the crossing made it a hazardous one. His testimony created a jury question as to whether Mr. Thompson's failure to stop was the result of negligence on his part, or whether, even if he had tried to stop, he would have been in a nonrecovery zone. Given the testimony at trial and considering that testimony in light of the instructions given to the jury, we conclude that the trial court properly submitted the issue of contributory negligence to the jury.
Next, the defendants contend that the trial court erred in admitting into evidence what they argue was an offer of compromise made to the plaintiff by the railroad's claims agent, Charles Wickwire.[1] Testimony tended to show that after the accident, Wickwire approached the plaintiff's brother and admitted that Norfolk Southern was liable for the accident.[2]
Thereafter, Wickwire contacted the plaintiff and, according to her testimony, told her to make a list of funeral expenses and the cost of her husband's car and told her that the railroad "wanted to do what was right." She testified:
 "He came to my house and he identified himself as Charles Wickwire from Norfolk Southern as a claims agent. He wanted to tell me he was sorry about the death of my husband and he said he wanted to make things right. And I can't remember if it was me or my brother — I think it was me that said, 'Well, we know we have rights and we know we can get a lawyer but we don't know where to start.' And he said, 'Well, you can start by making a list — a list with funeral expenses and Wayne's car, the cost of his car and the cost of motel bills for out-of-town guests that attended the funeral.' He said he wanted to be fair. At that point it upset me really bad, and I said, 'How can I put a price on the life of my husband who I loved more than anything the world? How can I do that?' He said, 'Well, you just think about it a few days and get back with me.' But I never called him back. I just couldn't."
R.T. at 138-39. We note our general rule:
 "The general rule is that offers of compromise by one party to another in a civil *Page 694 
action, whether before or after the litigation is begun, [are] inadmissible. Glaze v. Glaze, 477 So.2d 435 (Ala.Civ.App. 1985). Alabama courts also recognize that conversations in connection with settlement negotiations are inadmissible. Chandler v. Owens, 235 Ala. 356, 179 So. 256 (1938)."
Super Valu Stores, Inc. v. Peterson, 506 So.2d 317, 321
(Ala. 1987). The trial judge heard this testimony from the plaintiff outside the hearing of the jury. The plaintiff's brother had already testified that Wickwire had admitted to him that Norfolk Southern was liable for the accident.[3] The trial judge overruled the defendants' objection to the plaintiff's testimony. In Cochran v. Watson, 628 So.2d 407 (Ala. 1993), this Court recognized the general rule regarding offers of compromise, but found that payments made by the defendants to the plaintiff in that case were "inextricable from offered evidence that [the defendants] admitted liability and, therefore, were making payments in light of that admission." 628 So.2d at 408. Subsequent to Cochran, this Court, in Loweryv. Ward, 662 So.2d 224 (Ala. 1995), in an opinion by Justice Houston, reached a different result, distinguishing the facts in Lowery from the facts in Cochran, as follows:
 "[A] defendant's express and unqualified admission of responsibility is admissible, even if it is made during settlement negotiations, Kohn v. Johnson, [565 So.2d 165 (Ala. 1990)], Hughes v. Daniel, 187 Ala. 41, 65 So. 518 (1914); [C. Gamble, McElroy's Alabama Evidence (3d ed. 1977)], at § 188.01(2), as is evidence that a defendant has liability insurance and that his insurer has paid expenses incurred by the plaintiff (medical, repair, lost wages, etc.), provided the evidence of the insurance and the payment is inextricable or inseparable from other evidence indicating that the defendant expressly admitted liability, so as to give rise to a reasonable inference that the defendant's insurer made the payment in light of that admission. See Cochran v. Watson, 628 So.2d 407 (Ala. 1993); see, also, Crump v. Geer Brothers, Inc., 336 So.2d 1091 (Ala. 1976).
". . . .
 ". . . In Cochran, the plaintiffs sued Ray Thomas Cochran and the City of Saraland for damages, contending that Cochran, a police officer for the city, had negligently or wantonly caused his police vehicle to collide with their vehicle. From a judgment entered on a jury verdict for the plaintiffs, the defendants appealed. This Court affirmed, stating:
 " 'The City of Saraland and Cochran raise two issues on appeal. The first issue concerns the admissibility of evidence of certain payments made by the defendants' insurance company to Peggy Watson for medical costs incurred as a result of the accident. We find no error in admitting the evidence of these payments, for the following reasons.
 " 'Ms. Watson contends that following the accident she was contacted by the Hartford Insurance Company and that its claims representative told her that the City of Saraland and Cochran were responsible for the accident and that she should submit all medical bills to the claims representative for payment. Watson complied with this request, and all of her medical expenses, with the exception of approximately $190, were paid by Hartford before this action was filed. In addition, Hartford paid Ms. Watson for lost wages and reimbursed her for damage to her automobile that had been caused by the accident. There was further evidence, although disputed, that Officer Cochran admitted liability to Watson's son at the scene of the accident.
 " 'At trial, the defendants filed a motion in limine to suppress evidence of the fact that payments had been made to Ms. Watson with regard to the accident. The defendants argued that the payments were made as an offer to compromise or to settle the dispute and that, therefore, the court should apply the well-established rule that offers to compromise are not admissible. *Page 695 
 " ' " 'It is the general rule that evidence of an offer to compromise or settle a disputed claim will not be received as an admission of the party making the offer. An offer of agreement to pay, or even payment, in the way of compromise, is not an admission of indebtedness nor of any fact from which indebtedness may be inferred.'
 " ' "Griffin v. Hardin, 456 So.2d 1113, 1116
(Ala.Civ.App. 1984). See also Super Valu Stores, Inc. v. Peterson, 506 So.2d 317
(Ala. 1987), Millsap v. Williamson, 294 Ala. 634, 320 So.2d 649 (1975), and Indemnity Co. of America v. Pugh, 222 Ala. 251, 132 So. 165
(1931)."
 " 'Harris v. M S Toyota, Inc., 575 So.2d 74, 79-80 (Ala. 1991). While clearly this is the rule, the evidence in this case does not support the contention that any payments made to Ms. Watson constituted an offer to compromise; rather, they are inextricable from offered evidence that Cochran and the City of Saraland admitted liability and, therefore, were making payments in light of that admission.
 " ' "It is the law of this state that, where there is no doubt that a proffered statement was an offer of compromise and was made in the negotiation of the settlement of a claim or dispute, it is error to admit such statement into evidence. Millsap v. Williamson, 294 Ala. 634, 320 So.2d 649 (1975); Langham Small Motors v. Thomas, 390 So.2d 1055 (Ala.Civ.App. 1980). However, the rule does not apply when the statement made is one [admitting] responsibility. Millsap, 294 Ala. 634, 320 So.2d 649."
 " 'Creighton v. Norris, 512 So.2d 111, 112
(Ala.Civ.App. 1987).'
 "628 So.2d at 408-09. (Emphasis added [in Lowery].)"
Lowery v. Ward, 662 So.2d at 226-27. In holding that the trial court had erred in admitting evidence of certain statements made by the defendants to the plaintiff in Lowery, Justice Houston noted:
 "We can find no evidence from which one could reasonably infer that either of the defendants or any representative of Alfa [Insurance Company] ever admitted liability for the damage or injury sustained by the plaintiffs."
662 So.2d at 227.
We have considered the evidence in this case in light of this Court's holdings in both Cochran and Lowery and we find that the facts of this case are more akin to those in Cochran than to those in Lowery. Because a jury could find that Wickwire's offer to pay funeral expenses was made in light of Wickwire's earlier admission to the plaintiff's brother that the railroad was liable, the trial court did not err in admitting evidence of Wickwire's statements to the plaintiff.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HOOPER, C.J., and ALMON, SHORES, HOUSTON, INGRAM, and BUTTS, JJ., concur.
MADDOX, J., concurs in the result.
[1] The trial in this case began before January 1, 1996; therefore, the new Alabama Rules of Evidence do not apply.
[2] Evidence of this admission was admitted at trial without objection.
[3] This alleged admission of liability was said to have occurred before the alleged conversation between Wickwire and the plaintiff as to which the plaintiff testified.