[L. A. No. 12452. In Bank.—June 30, 1933.]

SARA F. HERSH et al., Respondents, v. AURELIO GARAU et al., Appellants; ALLEN R. MacCONNELL, as Trustee in Bankruptcy, etc., et al., Interveners.

Haas &. Dunnigan, Walter F. Haas, H. C. Johnston, G. E. Kerrin and W. E. McClintock for Appellants.

Meserve, Mumper, Hughes & Robertson and Baldwin Robertson for Respondents.

Holbrook, Taylor, Tarr & Horton, Joseph K. Horton and D. Howard Painter for Interveners.

CURTIS, J.—This action was instituted by plaintiffs, Sara F. Hersh and Samuel Hersh, husband and wife, to recover damages in the sum of $150,000 for the refusal on the part of defendants, Aurelio Garau and Sarah Garau, husband and wife, to convey to plaintiffs certain real property in accordance with the terms of a written option to purchase said property given by defendants to one Morris Rauch and by him assigned to plaintiff Samuel Hersh.

The undisputed facts of the case, very briefly stated, are as follows: In November, 1922, Aurelio Garau and his wife, Sarah Garau, were the owners in fee simple of a piece of property consisting of approximately eight acres known as the "Garau Home Place" located near Culver City, which property is bounded on the south side by Washington Boulevard, a major boulevard from Los Angeles to Venice, on the west side by National Boulevard, and on the north side by Venice Boulevard. During the month of November, 1922, Garau and his wife entered into an agreement leasing said property to the Green Mill Catering Company and in January, 1923, said company commenced the construction thereon of a large cafe and restaurant building. Thereafter the Green Mill, Inc., was formed, which assumed the rights, duties and privileges of said Green Mill Catering Company and completed said building, at a total cost in excess of $90,000. During this period of construction Morris Rauch secured from Garau and his wife a written option, dated March 26, 1933, for one year, to purchase said property for a consideration of $90,000 cash, or upon terms to be agreed upon by the parties. This option was given for the reason that Rauch stated that it was impossible for the Green Mill, Inc., to finance the construction of the building on leased property without an option to purchase the property during the life of the lease, and it was the understanding of Garau and Rauch that upon the satisfactory completion of the building Rauch should repurchase from Garau the stock

in the Green Mill, Inc., which Garau had theretofore purchased. Thereafter, Rauch interested Samuel Hersh in furnishing money for the completion of said building, and Hersh out of funds owned by his wife put into the construction of said building a substantial amount of money and Rauch assigned, by written assignment, to Samuel Hersh, the option upon said real property. The date of said written assignment was September 26, 1923, and two days later it was put on record in the office of the county recorder. At the same time another written agreement was entered into between Rauch and Hersh with reference to the purchase of stock in the Green Mill, Inc., by Hersh, and setting out certain conditions upon which Rauch would be entitled to a one-half interest in said option. On February 15, 1924, Hersh personally delivered to Garau and his wife a written notification of his election to exercise said option, agreeing unconditionally therein to pay the $90,000 in cash, or upon any terms of payment satisfactory to Garau. Garau informed Hersh that he should see his (Garau's) attorney, and thereafter Hersh received from the attorney for Garau a letter stating that Garau declined to accept the tender or offer of cash or terms "for the reason that no consideration of any kind was paid Mr. or Mrs. Garau . . . for the option mentioned in your letter". Subsequent to this rejection of the tender, Morris Rauch was killed in an accident, and was not available as a witness by either party. Thereafter the Green Mill, Inc., went into bankruptcy.

The case was tried by the court sitting without a jury and judgment was rendered in favor of plaintiffs and against the defendants for damages in the sum of $150,000. The complaint alleged that the consideration moving to said Morris Rauch for said assignment was furnished by and was the property of Sara F. Hersh, and that said assignment was taken in the name of Samuel Hersh, as the trustee of and for the benefit of Sara F. Hersh. Said judgment was, therefore, rendered in favor of the plaintiffs "for the benefit of Sara F. Hersh as her sole and separate property". From this judgment the defendants have appealed.

Appellants advance as the basis of the claim that respondents are not entitled to damages for the refusal of appellants to convey said property in accordance with the

terms of the written option the following reasons: (1) No consideration was paid by Morris Rauch to appellants for the option, and they, as optioners, were therefore not required to carry out the terms of the option; (2) at a time prior to the assignment of the option by Rauch to Hersh, the original parties, appellant Garau and Morris Rauch, by mutual consent and agreement, orally expressed, had abandoned the option and it thereafter ceased to have legal force or effect; (3) the tender of performance made by Hersh to Aurelio Garau was not effectual for the reason that, although Hersh was the legal owner of said option, he was holding it in trust for persons whose interest he did not disclose to the optioners at the time of said tender; (4) Hersh at the time of said tender did not have the present ability to pay the consideration of $90,000 cash for said real property; (5) the property had not increased in value and was not worth the value of $240,000 on February 15, 1924, the date of the tender by the optionee; and (6) the disinclination and refusal of the optioners to convey said real property was based upon an honest belief that said option was null and void and of no effect and not upon the fact that the value of the property had increased from $90,000 to $240,000, and that, therefore, the optioners were not acting in bad faith in making such refusal, and consequently the measure of damage is not that set out in section 3306 of the Civil Code.

It is apparent that every point raised by appellants has to do with a question of fact. The case, therefore, simply presents the question of whether there is sufficient evidence to support the findings of the trial court upon which the judgment is based. In brief, the trial court found that the option was given by the defendants for a valuable consideration; that it has never been revoked; that plaintiffs were ready, able and willing to pay the consideration as the purchase price of the property on February 15, 1924; that plaintiffs made a proper tender and thereupon exercised said option; that the defendants in bad faith refused to convey said property by reason of the increase in value of said property, and that the property had increased in value and was worth at said time not less than $150,000 in excess of the consideration set out in said option.

We have read and carefully examined the record and are of the opinion that the findings so made are supported by the evidence. There is a conflict of evidence it is true, but the rule is well established that in such a situation the determination of the trial court is conclusive unless the testimony is so obviously false or so inherently improbable as to require its rejection. Appellants argue that the evidence offered in favor of plaintiffs is unworthy of credence and should be rejected. There is nothing in the facts and circumstances as testified by plaintiffs and witnesses in behalf of plaintiffs so inherently improbable as to render such testimony unworthy of credence. Neither are there contradictions or inconsistencies therein which would indicate that the testimony was obviously false. The trial court deemed the testimony in behalf of plaintiffs worthy of belief and accepted as true plaintiffs' version of the transaction. We are of the opinion that the trial court was amply justified in so doing.

It might be well to here set out briefly the additional facts educed upon the trial of the case which support the position of plaintiffs with reference to the validity of the option. Although Garau testified that, previous to the assignment of the option to Hersh by Morris Rauch, it had been abandoned by mutual consent of the original parties, orally expressed on several different occasions, there is in the record testimony by Samuel Hersh, which was corroborated by the testimony of another witness, that before Hersh advanced any money for the construction of the Green Mill cafe, Mr. Rauch brought Mr. Garau to see Mr. Hersh for the express purpose of having Mr. Garau assure Mr. Hersh that the option was valid, in order that Hersh might be induced to invest his money, and that during the conversation Mr. Garau was asked ''if everything was all right; if the option was regular and valid'', to which Mr. Garau replied that ''everything was all right, he was very anxious to have the building completed, because it had been partly abandoned then''. Mr. Levy, in corroboration of this testimony, testified that he was introduced to Mr. Garau by Mr. Rauch and he had inquired of Mr. Garau if the option was a *bona fide* option, stating that Mr. Hersh was thinking of putting money into the venture and before Hersh put any money into it, he wanted to be sure ''there was

no hitch at all". At that time Mr. Garau said, "That is all right, I don't care whose money goes in if the building is completed. Mr. Rauch has this option and when he pays me at any time at all, he can have the building and he can have the land." The witness then asked Garau if he would be willing to come up to Mr. Hersh's office and make the same statement and the following day Mr. Garau came to Mr. Hersh's office and stated in the presence of Mr. Hersh and Mr. Rauch the substance of what he had said the day previous—that the option was a valid option and that if the money was tendered him at any time at all, he would convey the property to Mr. Hersh or Mr. Rauch. Mr. Garau admitted going to Hersh's office but denied discussing the option. In addition to this testimony of Hersh and Levy with reference to this occasion there is the testimony of Mr. Rubens, corroborated to some extent by that of Mr. Rosen, that on another occasion in September or October, 1923, at the office of the attorney for Mr. Garau, at which there were present several persons besides Mr. Garau and his attorney, Mr. Rauch, Mr. Hersh, Mr. Levy and the witness, the question of the option was discussed in the presence of Mr. Garau, at which time Mr. Rauch stated that he had assigned the option to Mr. Hersh and was going to get the money for finishing the construction of the building from Mr. Hersh. The question also came up as to how Mr. Garau would take the purchase price and it was suggested that it would not be beneficial for him to take the entire amount in cash as it would raise his income tax for the year tremendously. It is apparent that despite the testimony of Garau that the option had been withdrawn and abandoned by the original parties prior to its assignment by Rauch to Hersh, there is sufficient evidence to support the finding of the trial court that the option had not been withdrawn but was in fact in full force and effect at least up to the time of the conversations herein narrated. Obviously this discredits the claim of appellants that the option had been withdrawn previous to its assignment to Mr. Hersh. And we think there is sufficient evidence to warrant the conclusion that no attempt was made to revoke the option between the time it was assigned to Hersh and the date on which Hersh made tender of performance to the optioners. Mr. Hersh testified positively

that at no time previous to his tender did Garau notify or inform him that the option had been revoked and was no longer effective. There was never any attempt made to revoke the option by written notice prior to its acceptance, and the letter written by the attorney for Garau *after* the tender was made by Hersh failed to state that the option had already been revoked. ■ Irrespective, therefore, of whether any consideration was given for the option, it constituted a continuing offer which remained open for one year unless sooner revoked by notice to the optionee, and the option in the instant case not having been revoked prior to acceptance, became a valid and binding contract between the parties as soon as proper tender of performance was made by the optionee.

■ We do not wish to be understood as holding that there was in fact no consideration. "A written instrument is presumptive evidence of a consideration." (Civ. Code, sec. 1614.) And, "the burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it". (Civ. Code, sec. 1615.) Garau, it is true, testified that Rauch paid him nothing for the option. But accepting as true the fact that no money was paid for the option, there is in the record the testimony of Garau that one of the reasons he gave the option to Rauch was the promise of Rauch to repurchase from him the Green Mill, Inc., stock which he had theretofore bought. The trial court may well have concluded that this was a sufficient consideration for the giving of the option.

■ We are satisfied that the tender made by Hersh was proper and sufficient. The authorities cited by appellants in support of their contention that Hersh, although the legal owner of the option, was in fact holding such title as trustee for other undisclosed persons and could not, therefore, make the tender in his own name, do not involve the question of a trustee, but involve situations in which tender was attempted to be made by strangers or mere volunteers. Obviously they are without application here. Hersh was not a stranger or volunteer. He was the legal owner of the title to the option and was known to be the legal owner by the optioner, Garau. Garau's own testimony shows that he looked up the records and found that the assignment from Rauch to Hersh

had been recorded. The tender made by Hersh cannot for this reason be held to be ineffective.

An examination of the record with reference to the ability of respondents to pay the $90,000 cash consideration required by the terms of the option shows that the offer to pay this amount in cash, or upon terms to be agreed upon, was not a mere idle gesture. Mr. Hersh testified that he was borrowing and lending money all the time as part of his business and was prepared to meet the payment when he needed the money. His statement of his financial standing furnished to the Bank of Italy in February, 1924, showed that he and his wife jointly owned real and personal property having a net financial worth of over $300,000. Appellants make much of the fact that the bank balances of respondents only totaled $2,816 of the date of the purported tender. In view of respondents' financial worth and rating this fact is not of vital importance. In *Laack* v. *Dimmick*, 95 Cal. App. 456 [273 Pac. 50, 55], the court held that it was not necessary that in order for a purchaser to be able to buy he must have the purchase money on hand in the form of money or to his credit at the bank, saying "the word 'able' means financially able; this does not mean, however, that such purchaser must have all the money in his immediate possession or to his credit at a bank, but only that he must be able to command the necessary funds to close the deal within the required time. . . . It is clearly sufficient if the purchaser has assets of greater value than the purchase price and a financial rating which will enable him to command the funds when needed. For in such event the purchaser is not only able to purchase but is able to respond in damages, if he refuses to go ahead with the contract." And in *Russell* v. *Ramm*, 200 Cal. 348 [254 Pac. 532, 534], the court said: "The rule . . . which would require a would-be purchaser of property to make a showing either that he had the purchase price on hand in the form of money or that he had consummated such a loan upon his available property or securities . . . would be to lay down too drastic a rule governing business transactions of the kind presented in the instant case." Both of the above cases involved suits for brokers' commissions, but we think the same principle is applicable to the case of an option. We think it sufficiently appears from the record that if the appellants had accepted

the exercise of the option and subsequently the respondents had refused to perform, the respondents would have been amply able to respond in damages. This being so, the finding of the trial court with reference to the ability of respondents at the time of making the tender was clearly correct.

A considerable portion of the record is taken up with testimony of real estate men as to the market value of the property in February, 1924, the date of the tender of performance. Appellants insist that the finding of the court that property worth $90,000 in March, 1923, was worth $240,000, an increase of $150,000, in February, 1924, eleven months later, is so ridiculous that on its face it is palpably false. To anyone not familiar with the tremendous increase in the values of real estate during this particular period in and around Los Angeles, the claim of appellants would seem to be justified. But appellants in their opening brief state that "as a matter of common knowledge, the Los Angeles territory was in the midst of an unusual boom and a flood of easy money". Three real estate men testified as witnesses for the respondents. The first witness, Mr. C. V. Loop, placed the value at $300,000 in February, 1924. Mr. Loop had been engaged in the real estate business in Culver City and had had actual experience in the purchase and sale of real property, and in the making of appraisals, having been chairman of the appraisal committee of the Real Estate Board, and one of the appraisers on the opening and widening of Exposition Boulevard, as well as other private appraisals. Mr. Loop was familiar with the property, as he had a purchaser interested in the purchase of the property at that time. He knew of the lease on the property here involved and had taken that into consideration in making his estimate of the value of the property. Mr. Glen A. Davidson, another witness for respondents, was, at the time of the trial, chairman of the appraisal committee of the Culver City Realty Board, and had acted as referee under an appointment by a judge of the Superior Court of Los Angeles County in a condemnation suit which involved land embraced in this action. He had also appraised property for the First National Bank of Culver City, and was apparently well qualified to give his opinion as to the value of the real estate. Mr. Davidson, after an extended ex-

planation of the manner in which he arrived at his figures, placed the market value of the property here involved in February, 1924, at $259,708.75. He did not include in this estimate the value of the Green Mill cafe building, stating that he figured the value of the buildings which would revert to the lessor would counterbalance the fact that there was a lease bringing in a low rental on the property. Mr. Melville Hall, who had been in the real estate business since 1918, engaged in purchasing raw acreage and subdividing it, valued the property at $240,000 for the purpose of subdivision on terms, and not less than $200,000 cash. He stated that values had increased tremendously during that period. The only testimony contradictory of this evidence was that offered by Mr. Garau himself, who claimed it was not worth more than $120,000, and a witness in his behalf, who had only been in the real estate business for a year, and who placed the value of the property without improvements at $60,000. There can be no question but that the property by reason of its frontage on three main boulevards leading from the beach cities to Los Angeles was in a particularly advantageous position and undoubtedly the increase in its value was greater than that of property in the vicinity not fronting on all three boulevards. It appears from the record that the real estate men testifying for the respondents are men of standing in the community, with considerable business experience along real estate lines. Their testimony was accepted as true by the trial court, and the findings based thereon will not be disturbed.

As to the finding relative to bad faith, it will suffice to say that although it is true that there is no direct evidence in the record of bad faith—no one who could testify that appellants had admitted that their reason for refusing to perform was the increase in the value of the property, the circumstances surrounding the transaction practically compel this conclusion. Appellants insist that bad faith cannot be predicated upon an optioner's refusal to accept tender based upon his honest belief that the option was not valid by reason of the fact that no consideration had been given for it and it had in fact been revoked by mutual consent of the original parties. If the record sustained appellant Garau's claim that he did honestly entertain a belief that the option had been revoked prior to the time Hersh as

optionee made the tender and was no longer effective, the trial court would not have been justified in making, and it is extremely doubtful whether it would have made, a finding that the sole reason for appellants' refusal to accept tender was the rise in price in real estate in that vicinity. However, it must be borne in mind that according to the testimony of respondents' witnesses, at the time of the assignment of the option by Rauch to Hersh, and therefore subsequent to the time when, according to Garau, the option had been abandoned by mutual consent and was no longer effective, Garau informed Hersh that the option was valid and subsisting and made no claim that it had been in fact revoked. If this testimony be true, and the trial court was warranted in accepting it as true, the conclusion is inescapable that Garau did not in fact, as indicated by his conduct on that occasion, entertain an honest belief that said option had been abandoned by the mutual consent of himself and Rauch. Moreover, it is apparently conceded by appellants that subsequent to the assignment by Rauch to Hersh, at a meeting in the office of Garau's attorney, the question of the option was discussed. This clearly indicates that appellants did not entertain an honest belief that the option had been previously revoked. Upon this showing the trial court was justified in making the finding it did with reference to bad faith.

We are satisfied that there is substantial evidence to support the findings of the trial court and that the findings, in turn, support the judgment.

Judgment is affirmed.

Langdon, J., Waste, C. J., and Seawell, J., concurred.