[Civ. No. 6084. Third Appellate District.—August 31, 1938.]

W. W. COTTINGHAM, Respondent, v. GERTRUDE H. L. SMITH, Appellant.

H. L. Preston, Lilburn Gibson and Leo L. Schaumer for Appellant.

Charles Kasch for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment which was rendered against her for broker's commissions for procuring a purchaser of real property deemed to be ready, willing and able to buy the land upon the terms of a written contract therefor.

It is claimed the findings and judgment are not supported by the evidence for the reason that there is a fatal variance between the vendor's contract to sell and the written offer to buy the real property.

The defendant owned the "Fountain Ranch" in Mendocino County, consisting of 2,862 acres of farm land, subject to a mortgage of $21,000 held by the Federal Land Bank. The plaintiff is a duly licensed real estate broker residing at Ukiah. March 17, 1937, the defendant executed and delivered to the plaintiff the following written agreement to sell her ranch:

"I, Gertrude H. L. Smith hereby give to W. W. Cottingham the exclusive right to sell or exchange my ranch at any time within the next 60 days from the above date for the sum of $35,000.

"The said ranch is located in Mendocino County about four miles southwest of Hopland and known as the old Fountain Ranch or the Smith Ranch, consisting of 2862 acres, together with all improvements, farm implements and equipment.

"In event of exchange or sale within said time, W. W. Cottingham is to receive a full 5% commission of the sale price. At any time after the expiration of this agreement, should the ranch be sold to any person or persons contacted by Mr. Cottingham, he is to receive a full 5% commission of the sale price.

"(Signed)  GERTRUDE H. L. SMITH,
"CHARLES T. SMITH, JR."

May 14, 1937, the plaintiff procured Frank B. Cook to submit an offer in writing to purchase the ranch for the sum of $35,000. Cook's offer was *bona fide* in every respect, but it includes a condition not contained in the defendant's agreement to sell the land. With the offer he deposited his check for $500 to bind the bargain. His agreement reads:

"To Gertrude H. L. Smith and to W. W. Cottingham, her agent:

"I hereby make you a *bona fide* offer of $35,000.00 in lawful money of the United States of America as and for the purchase price of that certain ranch owned by Gertrude H. L. Smith located in Mendocino County about four miles southwest of Hopland and known as the old Fountain Ranch or the Smith Ranch, consisting of Two thousand eight hundred sixty-two (2862) acres, together with all improvements, farm implements and equipment. I also herewith tender to you the sum of $500.00 as a down payment on the purchase price of said ranch in the event that my offer is accepted. This offer is good for thirty days from date hereof and if you fail within said period of thirty days to deliver to me a grant, bargain and sale deed to said premises conveying the same to me free and clear of all incumbrances, I may withdraw this offer and withdraw my deposit at my option, in which event I am to be immediately and automatically released from any and all further obligation hereunder. It is understood that anything hereinabove to the contrary notwithstanding, that the Government loan now on said premises, exclusive of any penalties or delinquencies thereon may remain on said property in the event that the said United States Government authorities agree and that the amount thereof is to be deducted from the amount of the purchase price actually paid to you.

"It is particularly understood that my offer of $35,000.00 is the total amount of my offer for the entire premises and equipment.

"(Signed) FRANK B. COOK."

The defendant rejected Cook's offer to purchase the land and sold it to another person at an increased price.

The only question which is involved on this appeal is whether Cook's offer to purchase the property is in substantial compliance with the terms of the defendant's contract with plaintiff so as to entitle the broker to his commissions for procuring a purchaser ready, willing and able to buy the land *on the terms prescribed*. This question must be determined by construing together the terms of the two instruments which are involved in the proposed sale of the

land. The appellant's opening brief correctly states the rule applicable to the present situation as follows:

"Whatever right the respondent has in this matter must be determined from a consideration of the two instruments, to-wit: the plaintiff's contract with Mrs. Smith, and the written offer submitted by Mr. Cook. If Mr. Cook's offer is strictly in accordance with Mr. Cottingham's contract with Mrs. Smith then Mr. Cottingham is entitled to his money. If Mr. Cook's offer is anything less than or different from those terms contained in the written authorization from Mrs. Smith to Mr. Cottingham, then Mr. Cottingham cannot recover. The issue is clean cut."

We therefore assume the appellant does not now contend that Cook was not ready, willing and able to buy the defendant's land for $35,000. The defendant's attorney stipulated at the trial that "Frank B. Cook was ready, able and willing to buy the property . . . for $35,000". During the course of the trial the defendant asked permission to withdraw that stipulation, which was denied. The court adopted a finding to the effect that Cook was ready, willing and able to purchase the land for $35,000, in the following language:

"Frank B. Cook was ready, able and willing to make good his said offer and the court further finds that at the date of said offer by the said Frank B. Cook he, the said Frank B. Cook had gross assets of the reasonable value of Sixty Thousand ($60,000.00) Dollars and that the indebtedness of the said Frank B. Cook on said day amounted to Four Thousand ($4,000.00) Dollars, and that at said time the said Frank B. Cook had Eight Thousand ($8,000.00) Dollars in cash."

▮ The evidence with relation to Cook's financial ability to pay $35,000 for the land is conflicting. There is, however, substantial evidence to support a *prima facie* showing of his financial ability to raise $35,000 with which to pay for the land. In view of that *prima facie* showing the burden shifted to the defendant to prove that Cook was not financially able to purchase the land at that figure. (*Russell* v. *Ramm,* 200 Cal. 348 [254 Pac. 532]; *Hersh* v. *Garau,* 218 Cal. 460 [23 Pac. (2d) 1022].) The defendant failed to sustain that burden. The finding that Cook was financially able to purchase

350

the land for $35,000 is therefore adequately supported by the evidence.

We shall devote our attention to a construction of the two instruments involved in this controversy to determine therefrom whether Cook's offer to purchase the land substantially conforms to the essential terms of the defendant's contract with the plaintiff so as to entitle him to his broker's commissions for securing a purchaser ready, willing and able to buy the land on the terms of the contract.

It is the established rule of law in this state, in the absence of an agreement to the contrary, that when a broker who is regularly employed to sell real property on specified terms, procures a purchaser within the designated term of the contract who is ready, willing and able to buy the land on the terms expressed, or upon other terms satisfactory to the seller, he has earned his commissions. (*Twogood* v. *Monnette,* 191 Cal. 103, 107 [215 Pac. 542]; 4 Cal. Jur. 583, sec. 25.) If the offer to purchase the land contains material conditions not expressed in the contract to sell the land, it is not an unqualified acceptance and the broker is not entitled to his commissions unless the new conditions are accepted by the vendor. (*Colton* v. *O'Brien,* 217 Cal. 551 [20 Pac. (2d) 43].) The question to be determined in this case is whether the written offer of Mr. Cook to purchase the land contains a condition which was not contemplated by the defendant in her agreement to sell the property. We think a fair construction of the two documents impels us to hold that an entirely new condition of acceptance was included in the offer to purchase the land, and that the broker therefore failed to earn his commissions.

It is true that the intention of the parties expressed in written instruments will control the construction thereof. (Sec. 1859, Code Civ. Proc.) The essential statements of both instruments should be considered as a whole in determining the intention of the parties with relation thereto. (Sec. 1641, Civ. Code; *Balfour* v. *Fresno Canal & Irr. Co.,* 109 Cal. 221 [41 Pac. 876]; 6 Cal. Jur. 258, sec. 165.) The language of a contract is to govern its interpretation, if it is clear and explicit, and when it does not lead to an absurdity. (Sec. 1638, Civ. Code.) With the foregoing rules in mind, we have carefully examined the two documents to ascertain the

intention of the respective parties with relation to the terms thereof. ▮ It is clear and undisputed that the defendant signed and delivered to the plaintiff her written agreement on March 17, 1937, to sell her 2862-acre Mendocino ranch, within 60 days from that date, for $35,000. She had previously mortgaged that land to the Federal Loan Bank to secure a debt which then aggregated the approximate sum of $21,000. It appears that in securing that federal loan it became necessary for the defendant to join the National Farm Loan Association which issued to her certain shares of its capital stock, which shares, by the express terms of the mortgage, were hypothecated to the mortgagee as additional collateral security for the debt, and that the shares were to be automatically transferred to any subsequent purchaser of the mortgaged premises. The mortgage provides in that regard:

"In case the property hereinbefore described is sold or transferred by the grantor, his heirs or assigns, or by operation of law, *the National Farm Loan Association guaranteeing the payment of this loan may transfer on its books to the new owner the capital stock in said Association* held by said Association as collateral security in connection with its endorsement of this loan whether said stock was or was not transferred to said new owner, *said stock,* while outstanding, *being hereby declared to be appurtenant to said property.*"

It will be observed that the defendant's contract to sell the land neither refers to the Federal Loan Bank mortgage, consenting that it may remain as a lien on the property with whatever personal obligation against her that it created, nor does it mention the sale or transfer of the capital stock which she owned in the National Farm Loan Association as an incident to the transaction of sale of the land. Since her selling price of the land was specifically fixed at $35,000, without mentioning either the mortgage or the capital stock, it is reasonable to assume she contemplated selling the ranch for cash with the intention of satisfying the mortgage lien so as to absolutely relieve her from the burden of that obligation in case of a deficiency judgment or otherwise, and that she did not propose to convey her stock in the Association as a necessary incident to the transaction of selling her land. In spite of the defendant's omission to mention in her contract the existing mortgage or the capital stock, Mr. Cook, after

first clearly declaring in his written offer to purchase the land that:

"I hereby make you a *bona fide* offer of $35,000.00 in lawful money . . . as and for the purchase price of that certain ranch owned by (you) . . . This offer is good for thirty days from date hereof and if you fail within said period . . . to deliver to me a grant, bargain and sale deed to said premises *conveying the same to me free and clear of all incumbrances,* I may withdraw this offer . . . at my option",

deliberately nullified the preceding unqualified language by immediately thereafter saying:

"*It is understood that anything hereinabove to the contrary notwithstanding, that the Government loan now on said premises, exclusive of any penalties or delinquencies thereon may remain on said property* in the event that the said United States Government authorities agree *and that the amount thereof is to be deducted from the amount of the purchase price actually paid to you.*"

Apparently the preceding paragraph was a deliberate attempt to inject into the offer to buy the land a condition that it was to be purchased *subject to the mortgage.* In the cross-examination of Mr. Cook the following colloquy occurred regarding that subject:

"Q. In other words, you was paying the difference between the $35,000 in cash, spot cash, and the Federal Land Bank mortgage? A. That's correct."

The respondent contends that the preceding quoted language because of its use of the word "may" is a mere permissive statement that the federal mortgage might remain on the property subject to the option of the vendor of the land, and that it therefore creates no new condition of purchase not contained in the defendant's contract with the plaintiff. We are unable to so construe the paragraph. That construction would render meaningless the sentence, "It is understood that anything hereinabove to the contrary notwithstanding", etc. The last-quoted language seems to imply that the foregoing unqualified *offer* to pay $35,000 upon the receipt of a deed to the property *free and clear of all incumbrances* was not to be controlling, but upon the contrary that "it is understood . . . the Government loan now on said

premises . . . may remain . . . *in the event that the . . . Government authorities agree,* and that the amount thereof *is to be deducted* from the amount of the purchase price actually paid to you". Reading the entire context of Cook's offer it seems clear that he takes great pains to declare that in spite of what he previously said "it is (to be) understood" that he is only willing to buy the land subject to the federal lien, if the government agrees to permit the mortgage to remain against the land, and that he will then pay the defendant only the sum of $35,000 less the amount of the existing mortgage and accrued interest thereon. The last-quoted paragraph appears to be a very definite proposition to buy the land subject only to the mortgage remaining as a lien against it, provided the government consents to that procedure. The word "may" seems to have been used in a mandatory sense. It will be observed the written offer to purchase the land does not confer upon the defendant any option to decide whether the mortgage shall remain as a lien against the property. The declaration that it *may* remain, apparently means that it *shall* remain, and that the amount of the mortgage *will* be deducted from the selling price of the land. This plan is dependent only upon procuring the consent of the government, which holds the mortgage. The defendant has no option whatever to determine whether the mortgage shall remain as a lien against the property.

We are therefore convinced Mr. Cook's written offer to purchase the land is subject to an essential condition not contained in the defendant's contract with the plaintiff, and that it does not constitute a binding bargain to purchase the land on the terms of employment so as to entitle the broker to his commissions. We are of the opinion the evidence does not support the findings and judgment to the effect that the plaintiff procured a purchaser of the land who was willing to buy the property *on the essential terms* designated in the defendant's contract of sale.

It is conceded the plaintiff is entitled to judgment for the sum of $47.50 for money advanced to Mrs. Smith. With respect to that item the judgment is affirmed. Otherwise, the judgment is reversed, and the court is directed to render

judgment in favor of the defendant. The appellant may recover her costs on appeal.

Pullen, P. J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 27, 1938.