85 So.2d 900

### H. K. SCARBROUGH

v.

### Mary L. HOPE, d/b/a Hope Realty Company.

### 3 Div. 986.

Court of Appeals of Alabama.

March 6, 1956.

Jones, Murray & Stewart, Montgomery, for appellee.

Drayton N. Hamilton, Montgomery, for appellant.

PRICE, Judge.

This suit was brought by plaintiff, appellee, under the common count for work and labor done, to recover a real estate broker's commission in the sum of $437.50.

The case was tried by the court without the intervention of a jury. Judgment was rendered in favor of plaintiff for the amount claimed, and defendant appeals.

The written agreement under which defendant listed the property with plaintiff stated the price for the property as "Eleven Thousand and Five Hundred Dollars, ($11,-500) Dollars, or at a different price and terms acceptable to me," described the location of the property, the size of the lot, construction of house, number of rooms, etc., and stated: "Financed G. I. 4% Mtg. $6,000 approx Due payable $45.83," and "possession to be given within 30 days after sale is consummated."

The testimony for plaintiff is that two days later Mrs. Hope wrote plaintiff at his home at Fort Walton, Florida, that after an inspection of the house she was convinced that it would not bring more than $9,000 or $8,750. Plaintiff wrote across the bottom of this letter, "Sell it. The balance of the mortgage is $6,707.00." Signed, "H. K. Scarbrough," and sent this letter back to Mrs. Hope.

Upon receipt of the authorization Mrs. Hope called defendant stating she had an offer of $8,750, with a $500 binder. In the conversation Mr. Scarbrough asked if the offer was cash and witness told him, "it is as far as you are concerned, he is to assume the mortgage and pay you for your equity." Mr. Scarbrough said he would accept the offer, and confirmed the acceptance by wire the same day. The telegram read: "Confirming our telephone conversation of 3 Feb. sell house on Birmingham Highway for $8,750.00. Request 60 days possession."

The next day, February 4, 1954, Mrs. Hope prepared a sale contract which was executed by Mr. Sam Burge. This contract was mailed to Scarbrough on February 6, 1954, with a letter pointing out that the sale agreement provided for thirty days possession rather than the sixty days requested in the telegram. The contract was not returned or delivered by defendant. The agreement of sale signed by Mr. Burge provided:

"The purchase price shall be $8,750.00 payable as follows:

"Earnest money, receipt of which is hereby acknowledged $500.00

"Cash on closing of this trade $1480.00

"The balance to be handled as follows:

"G. I. Mortgage to be assumed by purchaser in the amount of $6707.00."

Witness testified further that at the time defendant listed the property with her he said he did not know the exact amount of the mortgage but that it was approximately $6,000, and she asked defendant to notify her when he determined its exact amount. After the agreement to sell was mailed to defendant, Maurice Bell, an attorney representing defendant, telephoned witness. The attorney said: "Actually that is a cash sale if he is going to assume the mortgage, and he said Harold was in hopes it would be a cash sale, that if it was, he would get several hundred dollars to deposit, and said the loan going through called for big interest, and it is amortized over a period of years, and said Harold thinks it was, and said let me check into it and I will call you back, and Maurice called me back and said Harold was perfectly happy about the whole situation."

Plaintiff further testified 5% of the sale price up to $10,000 was the standard prevailing rate of commission to the broker.

Mr. Sam Burge testified that he signed the offer to purchase the property, put up a $500 binder with plaintiff and was on February 4 and to the date of trial able, willing and ready to purchase the property at the price of $8,750.

The defendant, H. K. Scarbrough, testified that at the time he listed the property Mrs. Hope asked him to let her know the exact balance of the mortgage and in compliance with that request he endorsed on her letter, which was the first communication had with her, the balance due on the mortgage. When Mrs. Hope called long distance and said she had an offer of $8,750, witness asked who made the offer and she said she didn't remember. Asked if it was a cash sale, she said: "Oh, definitely." Defendant then told her to go ahead and sell it, and that he has not altered his authorization to Mrs. Hope since the telephone conversation in which he told her that he wanted to sell for cash. He stated further that he went to the Veterans' Administration to find out what his liability on the G. I. mortgage would be if the purchaser assumed payment of it.

Defendant's wife and brother-in-law testified they were present when defendant had the telephone conversation with Mrs. Hope and heard defendant tell her the sale was to be for cash.

Appellee contends first that the minds of the parties did not meet on all the material

terms of the contract, the parties being at variance on the question of what constituted a cash sale, the owner expecting to receive the entire purchase price of $8,750 in cash, so as to be able to pay off the encumbrance and so relieve himself from liability under the mortgage, while it is apparent that the broker believed if the purchaser paid the owner for his equity, it was, as to him, a sale for cash. Therefore, the broker did not produce a buyer willing to buy on the terms authorized by the owner, and she was not entitled to a commission.

■ It is the established rule of law in this State that brokers who are regularly employed to sell real property "are entitled to their compensation where they have procured a purchaser ready, able and willing to perform the terms specified or agreed upon, notwithstanding no actual transfer takes place because of the refusal of the seller to convey. Sayre v. Wilson, 86 Ala. 151, 5 So. 157; O'Neal v. Plowden, 220 Ala. 317, 124 So. 882; McCormick v. Tissier, 222 Ala. 422, 133 So. 22; Handley v. Shaffer, 177 Ala. 636, 59 So. 286; Bailey v. Padgett, 195 Ala. 203, 70 So. 637." Penney v. Speake, 256 Ala. 359, 54 So.2d 709, 714.

In the annotation on the subject of "What deviation in prospective vendee's proposal from vendor's terms precludes a broker from recovering commission for producing a ready, willing and able vendee," 18 A.L. R.2d 381, it is said: "In some instances it has appeared that an owner of property on which there was a mortgage or other indebtedness contemplated, in listing the property with a broker, a cash sale, the owner apparently desiring to discharge the lien upon the land and relieve himself from any further liability. If the broker in such circumstances procures a purchaser who offers to pay part cash and pay the balance by assuming the indebtedness, he has not produced a purchaser ready, willing, and able to buy according to the terms of his employment."

In the same annotation under subdivision 3 "Method of Payment," "offer to assume mortgage or other indebtedness instead of paying cash," is cited the case of Cottingham v. Smith, 28 Cal.App.2d 345, 82 P.2d 479. There the owner authorized the broker to sell her ranch for $35,000. The agent procured a buyer willing to pay $14,000 in cash and to assume a $21,000 mortgage held by the Federal Land Bank. The court, holding that the evidence did not support the findings and judgment to the effect that the broker procured a purchaser who was willing to buy the property on the essential terms designated in the owner's contract of sale, observed that since in the listing the selling price was specifically fixed at $35,-000, without mentioning the mortgage, it was reasonable to assume she contemplated selling the ranch for cash with the intention of satisfying the mortgage lien so as to absolutely relieve her from the burden of that obligation in case of a deficiency judgment or otherwise.

In the case of Dixon v. Malloy, 70 Cal. App.2d 322, 160 P.2d 896, 897, two parcels of property were involved and two listing agreements. The price of each piece of property was stated as "net 30,000." "Cash" was typed under the printed word "down." One of the listings stated: "'Incumbrance $13,000.00. Interest 5% By Northern Life Insurance per. Mo. ——— Taxes $500.00.'" The other listing showed an incumbrance of $12,000 and rate of interest 5%, but did not state the name of the holder. The broker procured a purchaser who agreed to pay the sum stipulated, less the incumbrances. The owner contended that the broker had not complied with the terms of the authorization to sell on the theory that in listing the property he had stipulated for the payment of the entire sum in cash, out of which he would pay the incumbrances, whereas the purchaser was proposing to pay in cash only the amount of the owner's equity in the property.

The court said: "If the owner's terms had called for the full sum of $30,000 in cash, out of which he would have to pay the encumbrances, no purpose would have been served by listing the encumbrances and the rates of interest. In order to give the word 'cash' the meaning attributed to it by appellant it would be necessary to ignore altogether the specification of the encumbrances. This would violate a fundamental

rule of construction which requires that the contract be construed as a whole, so as to give effect to every part, if reasonably practicable."

Further in the opinion, after stating that on examination of the record it was clear that the point was made for the first time on appeal that the listing agreement called for more than $35,000 in cash, the court observed:

■ "However this may be, we are satisfied that the listing agreements, considered by themselves, or with all of the circumstances surrounding their execution, fully support the construction which the trial court gave to them. It seems entirely clear to us that when an owner of real estate lists his property for sale with a broker, specifying the total price to be paid, and describing the encumbrances thereon which are not yet due, and with no stipulation that the encumbrances are to be paid off in case of a sale, he authorizes the agent to find a purchaser who will take the property subject to the encumbrances and pay the difference either in cash or upon terms stipulated in the listing."

■ The contract in the present case is almost identical with those set forth in the Malloy case, supra, except that in this case the word "cash" did not appear in the listing. We are of the opinion the statement of the court in the Malloy case applies with equal force to the present case. We are further of the opinion the evidence here is sufficient to support the judgment to the effect that the plaintiff procured a purchaser of the property on the terms designated by Mr. Scarbrough.

■ The defendant's second contention is that the broker forfeited her commission because she disobeyed the owner's express instructions by inserting in the contract signed by Mr. Burge a provision that possession would be given within 30 days after the consummation of the sale. The evidence which appellant insists proves that appellee disobeyed her principal's instructions is as follows:

"Q. And you later received the telegram from him, which requested 60 days possession, after consummation? A. Yes, that is right.

"Q. The contract you got with Mr. Burge provided for thirty days? A. Yes, I discussed it with Mr. Burge he said he wanted 60 days, and he said it was all right; I later put thirty days in.

"Q. Who was it you were representing; Mr. Burge or Mr. Scarbrough? A. Mr. Scarbrough.

"Q. But you ignored his instructions about 60 days? A. I did not. I knew it would give him ample time, because the abstract had to be delivered.

"Q. The contract provided 15 days after the abstract was delivered but you put down thirty? A. That is right.

"Mr. Hamilton: That is all.

"Redirect Examination

"Q. (By Mr. Stewart) Did you have any conversation with Mr. Scarbrough about the sixty days,—or the purpose of the 30 days? A. No, I did not, not after the contract was signed. When Mr. Scarbrough gave the listing, we put thirty days possession in. I felt, as he was anxious to try to sell the property, 30 days after the Abstract was delivered would be all right.

"Q. You pointed that out in the covering letter? A. I did."

The listing agreement authorized "Possession to be given within 30 Days after sale is consummated."

We are not impressed that this evidence shows appellee guilty of such bad faith toward the interests of her principal as to cause her to forfeit her commission.

The judgment of the trial court is affirmed.

Affirmed.